No. 40,519

In the Matter of the Estate of Katherine S. DeLano, Deceased. (HELEN DeLANO SUTHERLAND, Executrix of the Estate of Katherine S. DeLano, Deceased, *Appellee*, v. STATE OF KANSAS, ex rel. JOHN ANDERSON, JR., Attorney General, and STATE COMMISSION OF REVENUE AND TAXATION of the State of Kansas, *Appellants.*)

(315 P. 2d 611)

Opinion filed September 13, 1957.

*John Anderson, Jr.*, Attorney General, and *Fred N. Six*, Assistant Attorney General, argued the cause; *Paul Hurd, Michael A. Barbara* and *Dean Burkhead*, all of Topeka, were with them on the briefs for appellants.

*Russell W. Baker*, of Kansas City, Missouri, argued the cause; *James E. Smith*, of Topeka, *Eugene T. Hackler*, of Olathe, and *Robert B. Olsen*, of Kansas City, Missouri, were with him on the briefs for appellee.

*Paul Hurd* and *Marlin Casey*, of Topeka, *Henry Gott*, of Wichita, *Charles Vance*, of Liberal, and *Ervin G. Johnston*, of Kansas City, for the Bar Association of the State of Kansas, as *amicus curiae*.

The opinion of the court was delivered by

SCHROEDER, J.: This appeal involves an attempt of the probate judge pro tem of Johnson County, Kansas, by an order dated February 22, 1956, and by certain earlier actions, to make a Kansas resident executrix, the appellee, responsible for assets outside Kansas' boundaries which she did not have and had no way of obtaining.

Before this court are twenty-five conclusions of law, as to which appellants seek review by this court, made by the district court of Johnson County, Kansas, supporting its judgment which took the opposite position from that of the probate judge pro tem, and struck down the attempt to claim extra-territorial jurisdiction.

Important questions are presented by this appeal respecting the relative rights of the states of the union to administer upon, pay claims from, and eventually distribute the property of a decedent. The extra-territorial jurisdiction claimed by the probate judge pro tem and by the appellants in this appeal brings immediately to the forefront the question of whether such attempts offend the equal protection and due process clause of the fourteenth amendment and the full faith and credit clause of the United States Constitution. Appellants ask this court to say that such clauses of the Federal Constitution are not offended by their claim of jurisdiction, and

further ask this court to reverse the district court's conclusion that G. S. 1955 Supp., 59-303, is unconstitutional and void on six different grounds.

There is no dispute as to the facts in this case. Briefly summarized, the facts disclose that Katherine S. DeLano had resided in Jackson County, Missouri, for more than forty years when, about four years prior to her death, she moved her residence to 6442 Sagamore Road, one block west of the state line in Johnson County, Kansas. There she resided at the time of her death on June 4, 1954. The removal of her residence from Missouri to Kansas occasioned no change in her business activities or her personal financial affairs, which continued to be centered and conducted in Jackson County, Missouri. At the time of her death those of her assets located in Kansas were an automobile, personal effects and the residence real estate. Those of her assets which were located in Missouri at that time included intangible personal property which totaled over $312,000.00, consisting of bonds and notes in the amount of $93,826.01, bank accounts of $54,082.80, stock certificates of two corporations domiciled in Missouri of $9,900.00, and stock certificates plus accrued dividends of corporations domiciled in states other than Missouri or Kansas of $155,018.45.

The bank accounts were in various banks in Kansas City, Jackson County, Missouri. The bonds and the stocks, evidenced by certificates which represented shares in thirty-seven corporations, were in a safety deposit box in the Baltimore Bank in Kansas City, Jackson County, Missouri.

On the 18th day of June, 1954, administration proceedings were commenced in the probate court of Johnson County, Kansas, by admitting decedent's will to probate. The Kansas properties were taken into possession, inventoried and administered upon by the Kansas executrix and appellee, Helen DeLano Sutherland, who was the decedent's daughter and sole child.

On the 25th day of June, 1954, administration proceedings were commenced in the Jackson County, Missouri, probate court where the will of the decedent, being the same will admitted on June 18, 1954, in the probate court of Johnson County, Kansas, was admitted to probate. The bank accounts, bonds and stocks above mentioned were taken into possession, inventoried and administered upon by Donna S. Pearson, the executrix appointed by the Missouri probate court.

On October 18, 1955, attorneys for the Kansas executrix submitted required inheritance tax forms to the probate court in Johnson County which did not conform to the previously filed inventory of June 26, 1954, in that they listed the personalty purportedly located in Jackson County, Missouri. Shortly thereafter, on October 20, 1955, a probate judge pro tem was appointed and the State Director of Revenue was advised of the variance between the original inventory and the inheritance tax forms. The probate judge pro tem returned the inheritance tax forms to the attorneys for the Kansas executrix and on November 4, 1955, the Director of Revenue mailed notice to the Kansas executrix requiring a re-inventory and re-appraisal of the assets.

At a hearing on November 25, 1955, counsel for the Kansas executrix submitted to the probate judge pro tem of Johnson County, Kansas, for filing the following documentary evidence:

(a) An amended probate inventory showing all of the assets of the decedent wherever located and administered, and showing which of them were being administered in courts other than the courts of the state of Kansas.

(b) A duly authenticated copy of the inventory of the estate of the decedent filed and admitted of record in the probate court of Jackson County, Missouri, authenticated under the Acts of Congress relating to the full faith and credit to be given judicial proceedings in another state.

(c) An Inheritance Tax Division Form IH-12 containing a complete description and appraisement of all property of the decedent, tangible and intangible, wherever located, subject to inheritance taxes of the state of Kansas, being identical to and containing the same listings and appraisements as shown in Inheritance Tax Division Form IH-12, filed on behalf of the executrix on October 18, 1955.

(d) A duly authenticated copy of all of the orders of the probate court of Jackson County, Missouri, allowing claims against the estate of the decedent administered in Missouri, and of the receipts and checks filed therein showing payment of such claims, which authenticated copy or copies were authenticated under the Acts of Congress relating to the full faith and credit to be given judicial proceedings in another state.

(e) The original receipt of the United States District Director of Revenue showing the payment of federal estate taxes in this estate in the amount of $78,312.85.

(f) A Kansas Inheritance Tax Form IH-12Q.

(g) A Kansas Inheritance Tax Form IH-12G.

The probate judge pro tem took no action and the foregoing documents were again submitted for filing in the probate court of Johnson County upon the verified application of the Kansas executrix dated December 29, 1955.

The amended inventory correctly stated that the personalty located in Kansas totaled only $700.00, whereas the personalty located in Jackson County, Missouri, totaled over $312,000.00 as previously set forth. It also contained conditional statements that the personal property located in Missouri at the time of the death of Katherine S. DeLano was shown *for inheritance tax purposes only*.

On February 22, 1956, the probate judge pro tem admitted the amended inventory to record after striking the conditional statements and appointing new appraisers. The inheritance tax forms were returned to the executrix to be held until new appraisers could appraise the assets listed in the amended inventory, and the copy of the administration proceedings in the probate court of Jackson County, Missouri, duly authenticated under the Acts of Congress relating to full faith and credit, was denied record in the probate court of Johnson County, Kansas. The order of the probate judge pro tem dated February 22, 1956, entered on his own motion, found, among other things, that the probate court of Johnson County "by the statutes of this State" (Kansas) had jurisdiction of all tangible and intangible property of the decedent, Katherine S. DeLano, wherever located; that the papers and documents submitted in October, November and December, 1955, were either improper or improperly presented to the court; that the court had no power or authority to certify copies of inventories, claim statements and estate information to the Director of Revenue for assessment of inheritance taxes as requested by appellee; that statements made on the amended probate inventory submitted by the appellee to the effect that certain assets were not in her possession or under her control, but were under administration in Missouri (the truthfulness of which statements has never been a matter of dispute) were attempts to derogate from the jurisdiction of the court and were attempts to cause a conditional inventory to be filed and that the statements should be stricken from the inventory; that the Jackson County, Missouri, probate court did not have any jurisdiction over any of the assets of Katherine S. DeLano, deceased, and that its proceedings had in reference to the estate were void and of no effect.

Subsequently, the Kansas executrix appealed from the orders entered in accordance with the foregoing findings and conclusions to the district court of Johnson County on March 22, 1956, where this action was tried *de novo*.

The district court approved motions to intervene which were filed

by the appellants herein, the Attorney General and the State Department of Revenue and Taxation.

After full hearing the district court made findings of fact, the substance of which has heretofore been recited. The district court specifically found that the personal property of the decedent which was situated and located in the state of Missouri at the time of the decedent's death was correctly listed and described in the inventory of the decedent's estate filed in the probate court of Jackson County, Missouri, a duly authenticated copy of which was submitted with appellee's application to the Johnson County probate court in Kansas on December 29, 1955. It further specifically found that the Missouri executrix filed an inventory and appraisal of said personal property in the probate court of Jackson County, Missouri, where it has been duly received of record. The district court further found that such personal property inventoried by the Missouri executrix has not been in the possession or control of the Kansas executrix, nor within the state of Kansas, at any time since the death of the decedent.

The district court also made forty-one conclusions of law, thirty-eight of which were requested by the appellee. In substance the district court found that G. S. 1955 Supp., 59-303, in terms applied to this estate but to be unconstitutional and void for six separate and individual reasons:

1. It was beyond the power of the legislature to enact.
2. It violated the full faith and credit clause of the Federal Constitution.
3. It violated the due process clause of the fourteenth amendment, because it directed the commencement of judicial proceedings in the absence of jurisdiction.
4. It violated the due process clause of the fourteenth amendment by attempting to deprive appellee of property without due process of law.
5. It denied the appellee the equal protection of the laws.
6. It was an unwarranted use of the taxing power not enacted for any purpose reasonably related to such power.

Apart from 59-303, *supra*, the district court found that the *situs* of the intangible personal property here in question, consisting of bank accounts, bonds and stocks, was in Jackson County, Missouri; that "The Probate Court of Jackson County, Missouri, in its proceeding commenced under Section 466.010, R. S. Mo. 1949, entitled Estate of Katherine S. DeLano, No. 73807, had jurisdiction over the personal property of said decedent situate and located in the State of Missouri at the time of the decedent's death." The district

court also found that the Missouri proceedings should be accorded full faith and credit by the courts of the state of Kansas.

Of the forty-one original conclusions of law made by the district court, appellants assigned error with respect to only thirty of them. Appellants appear to have abandoned any opposition to five of these specifications and the remaining twenty-five conclusions of law specified as error resolve into the following issues presented on this appeal:

1. Do the courts of the state of Missouri have jurisdiction to administer upon the intangible property herein involved?

2. Do the courts of the state of Kansas have jurisdiction to administer upon the intangible property herein involved?

3. Does G. S. 1955 Supp., 59-303, purport to confer extra-territorial jurisdiction upon the courts of Kansas?

4. Does G. S. 1955 Supp., 59-303, violate the due process clause of the fourteenth amendment to the United States Constitution?

5. Does G. S. 1955 Supp., 59-303, purport to require Kansas courts to regard as void and of no force and effect some of the valid judgments, orders and decrees of the courts of sister states?

6. Does G. S. 1955 Supp., 59-303, violate the full faith and credit clause of the United States Constitution?

The statute in question, G. S. 1955 Supp., 59-303, provides as follows:

"The courts of Kansas shall have exclusive jurisdiction to determine the devolution of property by will or by descent of all persons who are residents of Kansas at the time of death as to real property located in Kansas and tangible or intangible personal property wherever located. Any determination with regard to the devolution of such property by other courts except federal courts having jurisdiction by reason of removal and appeals from Kansas courts, shall be void and of no effect, and in all such cases, the director of revenue and taxation of the state of Kansas shall refuse to issue any inheritance tax order, waiver or clearance. In any case where a resident of Kansas shall die owning real estate in Kansas, or tangible or intangible personal property wherever located, exceeding the statutory inheritance tax exemption for his heirs at law, and the heirs at law or others entitled to commence administration proceedings in Kansas shall fail to do so, or shall commence administration proceedings in any other state, the director of revenue of the state of Kansas provided no order has been made for the payment of inheritance taxes shall be authorized to commence administration proceedings in the county where such person was a resident at the time of death, and upon notices provided by law, the probate court shall appoint an executor or administrator upon such petition for administration as in other cases. Such executor or administrator shall take possession of all tangible and intangible personal property owned by the decedent, wherever located, and of all real estate owned by the decedent located in the state of Kansas, and shall make full inventory thereof for the director of revenue as provided by law."

The all-important questions in this appeal relate to the jurisdiction of a state to administer upon a decedent's personal property. Once the extent of that jurisdiction is ascertained, any overstepping of its bounds is necessarily void and it matters not whether the excessive claim of jurisdiction is made by the legislature, through a statute, or whether the excessive claim is made by the courts of the state, with or without a statute purporting to authorize it. In this sense, questions respecting the legality of G. S. 1955 Supp., 59-303, in its endeavor to subject a decedent's non-Kansas property to administration, are the same as those respecting the legality of the action of a court attempting to exercise the same jurisdiction under the more general probate statutes. (G. S. 1949, 59-1201, 1202 and 1203. See, also, G. S. 1949, 79-1511 and 1517.)

The first consideration in this opinion will be devoted to the question of jurisdiction to administer upon intangible personal property and the correlative question of *situs* of intangibles for administration purposes.

Two distinct legal propositions entirely separate should be borne in mind. First, that the state where personal property is located (whether tangible or intangible personal property) has full power to administer upon it, pay creditors out of it, and dispose of it within constitutional limitations, or, at its option to permit the courts and administrators of other states to take possession and administer it. Second, under normal circumstances the court where the intestate's personal property is located will look to the law of the decedent's domicile to determine heirship, *i. e.*, to determine the persons who succeed to the property and the proportions in which they take. The second proposition is but the usual conflict of laws rule which most courts adopt in order to assure a uniform distribution of all intestate personal property. It is not a mandatory rule, but merely one which most state courts have adopted in the distribution of personal property of a non-resident. Mississippi and Illinois have or had statutes providing that their own intestate laws shall govern distribution of the personal property of a non-resident decedent. (Mississippi Code, 1942 Ann., Vol. 1 A, § 467; and Sec. 1 of the Illinois Descent Act, § 1872, as amended by Laws 1929, p. 359, § 1, Smith-Hurd Statutes, ch. 39, § 1.) This they are free to do because under the proposition first mentioned they have the absolute and final jurisdiction to determine the disposition of personal property within the borders of the state. The United States Supreme Court

cases hereafter discussed will show the first proposition to be a fundamental rule of jurisdiction and the second a matter of comity.

In the event of any conflicting jurisdictional claims between the states of the union, the ultimate arbiter is the United States Supreme Court. Its opinions and decisions make it abundantly clear that the state of actual *situs* of the intangible has the undeniable legal and constitutional right to administer upon it, to the exclusion of all other states, and particularly to the exclusion of the decedent's domicile. (*Smith, Administrator v. The Union Bank of Georgetown*, 30 U. S. 518, 8 L. Ed. 212; *Vaughn et al. v. Northup et al.*, 40 U. S. 1, 10 L. Ed. 639; *Blackstone v. Miller*, 188 U. S. 189, 23 S. Ct. 277, 47 L. Ed. 439; *Baker v. Baker, Eccles & Company*, 242 U. S. 394, 37 S. Ct. 152, 61 L. Ed. 386; *Iowa v. Slimmer*, 248 U. S. 115, 39 S. Ct. 33, 63 L. Ed 158; and *Riley v. New York Trust Co.*, 315 U. S. 343, 62 S. Ct. 608, 86 L. Ed. 885.)

In *Smith, Administrator v. The Union Bank of Georgetown*, supra, the decedent had been a resident of Virginia. Prior to his death he had contracted a debt on bond to one Thompson in Virginia and was also indebted under a simple contract to the Union Bank, in the District of Columbia. The decedent's personal property, representing all of his assets at the time of his death, was located in the District of Columbia, where administration proceedings were commenced. These assets were not sufficient to pay all his debts. Thompson claimed a priority to the assets by virtue of the Virginia law which provided a preference for bonded debts. The Union Bank resisted Thompson's claim asserting the law of the District of Columbia which gave no preference to bonded debts. The pivotal issue was whether personal property can have a *situs* separate from the domicile of the owner for purposes of administration. If the *situs* was in Virginia the law of the domicile would apply. If the *situs* was in the District of Columbia it would be immaterial that the decedent was domiciled in Virginia. Justice Johnson, speaking for the court, said at page 525:

". . . even the common law has given it [personal property] a situs, by reference to any circumstances which mark it locally with discrimination and precision."

After discussing various English cases the rule was summed up at page 526 as follows:

"In point of fact it cannot be questioned, that goods thus found within the limits of a sovereign's jurisdiction, are subject to his laws; it would be an absurdity in terms to affirm the contrary . . ."

In referring to the conflicts which would arise in the event the laws of the domicile were held to overrule the policy or laws of the *situs* with respect to claims, priorities and contracts against public policy, the court said at pages 527 and 528:

"The actual course of legislative action in every civilized country, upon the effects of deceased persons, seems wisely calculated to guard against the embarrassments arising out of such conflicts, and to preserve in their own hands the *means of administering justice*, according to their own laws and institutions. . . .

"Whether it would or would not be politic to establish a different rule by a convention of the states, under constitutional sanction, is not a question for our consideration. But such an arrangement could only be carried into effect by a reciprocal relinquishment of the right of granting administration to the country of the domicil of the deceased exclusively, and the mutual concession of the right to the administrator, so constituted, to prosecute suits every where, in virtue of the power so locally granted him; both of which concessions would most materially interfere with the exercise of sovereign right, as at present generally asserted and exercised."

Another case often cited is *Vaughn et al. v. Northup et al.*, supra, where Justice Story delivered a unanimous opinion of the court in holding that an administrator could recover upon debts due from the United States Government to the decedent in any state where the administrator was empowered to act. Of the administrator's powers, Justice Story said:

". . . Every grant of administration is strictly confined in its authority and operation to the limits of the territory of the govenment which grants it; and does not, de jure, extend to other countries. It cannot confer, as a matter of right, any authority to collect assets of the deceased in any other state; and whatever operation is allowed to it beyond the original territory of the grant is a mere matter of comity, which every nation is at liberty to yield or to withhold, according to its own policy and pleasure, with reference to its own institutions and the interests of its own citizens. On the other hand, the administrator is exclusively bound to account for all the assets which he receives under and in virtue of his administration to the proper tribunals of the government from which he derives his authority; and the tribunals of other states have no right to interfere with or to control the application of those assets, according to the lex loci . . . The authorities to this effect are exceedingly numerous, both in England and America; . . ." (pp. 5, 6.)

In *Blackstone v. Miller*, supra, (overruled in *Farmers Loan Co. v. Minnesota*, 280 U. S. 204, 209, 50 S. Ct. 98, 74 L. Ed. 371, by reason of a change in tax policy in the supreme court) the issue was whether the state of New York could impose a succession tax upon the transfer of assets held in New York and owned by a decedent

domiciled in Illinois. The assets consisted largely of deposits in a New York bank. Determination of the foregoing issue was held to depend upon whether the state of New York had power to control the transfer of the assets. Justice Holmes, speaking for the court, said:

". . . the naked question is whether the State has a right to tax the transfer by will of such deposit.

"The answer is somewhat obscured by the superficial fact that New York, like most other States, recognizes the law of the domicil as the law determining the right of universal succession. The domicil, naturally, must control a succession of that kind. Universal succession is the artificial continuance of the person of a deceased by an executor, heir, or the like, so far as succession to rights and obligations is concerned. It is a fiction, the historical origin of which is familiar to scholars, and it is this fiction that gives whatever meaning it has to the saying *mobilia sequuntur personam*. But being a fiction it is not allowed to obscure the facts, when the facts become important. To a considerable, although more or less varying, extent the succession determined by the law of the domicil is recognized in other jurisdictions. But it hardly needs illustration to show that the recognition is limited by the policy of the local law. Ancillary administrators pay the local debts before turning over the residue to be distributed, or distributing it themselves, according to the rules of the domicil. The title of the principal administrator, or of a foreign assignee in bankruptcy, another type of universal succession, is admitted in but a limited way or not at all. See *Crapo v. Kelly*, 16 Wall. 610; *Chipman v. Manufacturers' National Bank*, 156 Massachusetts, 147, 148, 149.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"But it is plain that the transfer does depend upon the law of New York, not because of any theoretical speculation concerning the whereabouts of the debt, but because of the practical fact of its power over the person of the debtor. The principal has been recognized by this court with regard to garnishments of a domestic debtor of an absent defendant. *Chicago, Rock Island & Pacific Ry. Co. v. Sturm*, 174 U. S. 710. See *Wyman v. Halstead*, 109 U. S. 654. What gives the debt validity? Nothing but the fact that the law of the place where the debtor is will make him pay. It does not matter that the law would not need to be invoked in the particular case. Most of us do not commit crimes, yet we nevertheless are subject to the criminal law, and it affords one of the motives for our conduct. So again, what enables any other than the very creditor in proper person to collect the debt? The law of the same place. To test it, suppose that New York should turn back the current of legislation and extend to debts the rule still applied to slander that *actio personalis moritur cum persona*, and should provide that all debts hereafter contracted in New York and payable there should be extinguished by the death of either party. Leaving constitutional considerations on one side, it is plain that the right of the foreign creditor would be gone.

"Power over the person of the debtor confers jurisdiction, we repeat. And this being so we perceive no better reason for denying the right of New York

to impose a succession tax on debts owed by its citizens than upon tangible chattles found within the State at the time of the death. The maxim *mobilia sequuntur personam* has no more truth in the one case than in the other. When logic and the policy of a State conflict with a fiction due to historical tradition, the fiction must give way." (pp. 203, 204, 205, 206.)

In *Baker v. Baker, Eccles & Company,* supra, Justice Pitney, speaking for a unanimous supreme court made it perfectly clear that the state of a decedent's domicile has no authority *in rem* to administer upon and determine the devolution of intangible property having its *situs* in another state if the other state chooses not to relinquish its own authority over the other property.

A case directly in point is *Iowa v. Slimmer,* supra. There the decedent was an Iowa resident who had placed his entire estate consisting of promissory notes and government bonds in the state of Minnesota for safekeeping for the purpose of avoiding Iowa inheritance taxes. Iowa sought leave to file a bill in the supreme court against the state of Minnesota and certain citizens of Minnesota, including the decedent's son. Justice Brandeis wrote the opinion for a unanimous court and found that there was a "conclusive reason why leave to file the bill of complaint should be denied." The reason was set forth as follows:

"Substantially the whole of decedent's estate consisted of notes and bonds. Under an arrangement which had been in force for five years or more, these securities were, at the time of his death, in Minnesota in the custody and possession of an agent resident there. Minnesota imposes inheritance taxes; and its statutes provide (Minnesota Gen. Stats., 1913, § 2281) that no transfer of the property of a nonresident decedent shall be made until the taxes due thereon shall have been paid. Regardless of the domicil of the decedent, these notes and bonds were subject to probate proceedings in that State and likewise subject, at least, to inheritance taxes. Minnesota Gen. Stats., 1913, §§ 7205, 2271; *Bristol v. Washington County,* 177 U. S. 133; *Wheeler v. New York,* 233 U. S. 434. Furthermore, so far as concerns the property of the decedent, located at his death in Minnesota, the probate courts of that State had jurisdiction to determine the domicil. *Overby v. Gordon,* 177 U. S. 214. But even if decedent was not domiciled in Minnesota, its court had the power either to distribute property located there according to the terms of the will applicable thereto, or to direct that it be transmitted to the personal representative of the decedent at the place of his domicil to be disposed of by him . . ." (pp. 120, 121.)

The *Baker* and *Slimmer* cases were expressly relied upon in *Riley v. New York Trust Co.,* supra, where it was held that the state of the decedent's domicile did not have *in rem* jurisdiction to administer upon corporate stock having its *situs* in another state.

The appellants rely upon Kansas cases which they contend establish the law to the effect that intangibles such as debts and other choses in action ordinarily follow the person—*mobilia sequunter personam*—and have their *situs* at the domicile of the owner. The cases relied upon by the appellants include *Moore, Adm'x, v. Jordan,* 36 Kan. 271, 13 Pac. 337; *In re Miller's Estate,* 90 Kan. 819, 136 Pac. 255; *Toner v. Conqueror Trust Co.,* 131 Kan. 651, 293 Pac. 745; and *In re Estate of Rogers,* 164 Kan. 492, 190 P. 2d 857.

In all of these Kansas cases cited the decedent was domiciled in a state other than Kansas and this court had before it the question of whether the personal assets should be administered at the foreign domicile. The appellants contend that if the domiciliary administration theory sends assets out of Kansas for administration, there is no reason why the theory should not be equally valid when applied in reverse where a decedent is domiciled in Kansas. This argument is not impressive. While Kansas has the power to determine whether or not it shall retain assets within its boundary and administer upon them or give them up to the state of a non-resident decedent's domicile for the purpose of administration, which it has the perfect right to do, it is apparent from the decisions of the United States Supreme Court if this court should seek to impose the *mobilia* doctrine in reverse that it would immediately transcend its powers and seek to give its judgments extra-territorial effect by infringing upon the sovereign rights of other states.

In fact, the last word of this court on the subject is reflected in the case of *In re Estate of Shultz,* 180 Kan. 444, 304 P. 2d 539, which counters the *mobilia* doctrine. It was there stated:

"The supreme court of the United States has recognized that the rule of *mobilia sequuntur personam* whereby personal property of a deceased wherever located is subject to the law of his domicile, as is contended by the executrix, has yielded more and more to the modern rule of *lex situs* whereby such personal property is subject to the law of the state where the property is located. As a result, the state of the domicile has no power beyond its boundaries to control a decedent's personal property located in another state except where such state sees fit to make the excess over that necessary to pay debts and expenses subject to the domicile of the decedent . . ." (p. 447.)

Appellants argue that the *Shultz* case deals only with tangible personal property and not with intangibles. It is significant that this court cited three cases involving intangibles in support of the proposition stated in the *Shultz* case. The *Rogers* case upon which appellants rely heavily is consistent with the position taken by this

court with respect to extra-territoriality. Justice Wedell, speaking for the court in that case, reviewed many Kansas decisions supporting the *mobilia* doctrine and then said as follows:

"We have diligently explored the possibility of making an exception in cases of this character on the ground of public policy. . . ." (p. 500.)

This language clearly recognized the power of this court to change the doctrine had it seen fit to do so. The fact that other states have exercised their power to retain assets within their respective jurisdictions does not give Kansas the right to interfere with their sovereign right.

We therefore hold in view of the foregoing authorities that the courts of Missouri have jurisdiction to administer upon the intangible property in question and that the courts of Kansas do not have jurisdiction to administer upon such intangible property, unless the state of Missouri cedes its jurisdiction over such property to the domiciliary executrix in Johnson County, which it may or may not do. Laws of Missouri (1951) § 466.010, provide for the administration of estates of non-resident decedents, and after such administration has been conducted and the claims of local creditors allowed and paid ". . . any balance remaining shall be paid and delivered over either to the foreign domiciliary executor or administrator, if any, or to the legatees under decedent's will, or if decedent left no will, to the heirs or other persons entitled thereto under the law of decedent's domicile, as such probate court of this state may order."

Do the Missouri administration proceedings require recognition under the full faith and credit clause and does G. S. 1955 Supp., 59-303, directly conflict with the full faith and credit clause?

Art. 4, Sec. 1, of the Federal Constitution, requires each state to give full faith and credit to the "public Acts, Records, and judicial Proceedings of every other State." Congress, by the same section, is authorized to prescribe "the Effect" of such acts, records and proceedings, and it almost immediately exercised this power. (Act of May 26, 1790, c. 11, 1 Stat. 122.) The current statute provides that public acts, records and judicial proceedings shall in every state have the same full faith and credit as they have by law or usage in the court of the state from which they are taken. (62 Stat. 947, [1948], 28 U. S. C. A., §§ 1738 and 1739.)

Since *Pennoyer v. Neff*, 95 U. S. 714, 24 L. Ed. 565, and *Thompson v. Whitman*, 85 U. S. 457, 21 L. Ed. 897, it has been accepted as

settled that *in rem* proceedings, such as administration proceedings, are entitled to full faith and credit everywhere in the United States, subject to the right of other states to inquire into whether the court of first instant had actual jurisdiction over the *res*.

Reference is made to an excellent summary on the subject of the law herein presented in *Pennoyer v. Neff*, supra, at pages 722 and 723.

Appellants assert what they contend are two recognized exceptions to the full faith and credit doctrine. First, a second forum may refuse to recognize a foreign decree on the basis of public policy, citing *Anglo-Am. Prov. Co. v. Davis Prov. Co.*, No. 1, 191 U. S. 373, 24 S. Ct. 92, 48 L. Ed. 225; *M'Elmoyle v. Cohen*, 38 U. S. 312, 10 L. Ed. 177; and *Young v. Nave*, 135 Kan. 23, 10 P. 2d 23; and second, that the second forum may also refuse full faith and credit upon a determination that the first forum did not have jurisdiction over the person or subject matter, citing *Williams v. North Carolina*, 317 U. S. 287, 63 S. Ct. 207, 87 L. Ed. 279.

Appellants rely on both exceptions. In support of the public policy exception, they argue that the domiciliary administration of decedent's estate is supported by the taxation policy of this state, and say that any interference with the collection and enforcement of Kansas inheritance tax is an interference with the internal affairs of this state and contravenes the public policy of this state. This argument will be treated later in the opinion.

In support of the jurisdictional exception, appellants claim that the *situs* of intangibles is a jurisdictional fact and therefore open to question in a second state when the recognition of a decree is at issue. They say *situs* is a matter of legal definition and since *situs* is determinative of jurisdiction, Kansas upon a contrary finding of fact, *viz.*, the *situs* is at the domicile of the decedent, could refuse to extend full faith and credit to the Missouri probate decree without violating Art. 4, Sec. 1, of the Constitution. They cite no specific authorities for this point but rely generally upon *Baker v. Baker, Eccles & Company*, supra.

What appellants propound is to have this court determine as a matter of law that the trial court's finding as to the *situs* of the intangibles was erroneous. In support thereof, an over-simplified version of the holding in the *Baker* case is presented. It is contended that Kentucky's failure to give full faith and credit was there upheld on the basis that the second forum had the right to

determine domicile as a question of fact for itself without accepting the finding of the first forum on the question. This was true only because of other jurisdictional considerations. There it was contended by the Tennessee "domiciliary" representative that the personal estate of a decedent is a legal unit having its *situs* at the decedent's last domicile, and that the title to the whole of it, wherever situated, is vested in the duly qualified domiciliary representative. This contention, it should be noted, is exactly what appellants are contending in the instant case, and it is exactly what 59-303, *supra*, purports to require. The argument was flatly rejected by the United States Supreme Court. Kentucky was the second forum and the action affected only the ownership of shares of stock in a Kentucky corporation having no *situs* outside of Kentucky so far as appeared, and a claim of indebtedness against the same corporation. The sole question there was whether the Tennessee proceedings were entitled under the Constitution of the United States and the Act of Congress to recognition in the courts of Kentucky as adjudicating adversely the asserted rights of another, a resident claimant in Kentucky, to share as distributee in the personal property situated in Kentucky, or as conclusively determining the fact of the domicile of the decedent as affecting that right, *in view of the failure of the Tennessee courts to acquire jurisdiction over the person of such Kentucky claimant or over the corporation, domiciled in Kentucky.*

The Tennessee court had no jurisdiction *in personam* over the Kentucky claimant, or over the Kentucky corporation, and it had no jurisdiction *in rem* over the Kentucky assets in controversy beyond its borders. The Tennessee claimant invoked the aid of the Tennessee judgments as judgments *in personam*. The court said at page 400:

". . . Obviously, if fundamental principles of justice are to be observed, the ascertainment must be according to due process of law, that is, either by a proceeding *in rem* in a court having control of the estate, or by a proceeding *in personam* after service of process upon the parties to be affected by the judgment."

The court further said at page 401:

". . . The rule generally adopted throughout the States is that an administrator appointed in one State has no power *virtute officii* over property in another. No State need allow property of a decedent to be taken without its borders until debts due to its own citizens have been satisfied; and there is nothing in the Constitution of the United States aside from the full faith and credit clause to prevent a State from giving a like protection to its own citizens or residents who are interested in the surplus after payments of debts. . . .

it is now too well settled to be open to further dispute that the 'full faith and credit' clause and the act of Congress passed pursuant to it do not entitle a judgment *in personam* to extra-territorial effect if it be made to appear that it was rendered without jurisdiction over the person sought to be bound." (See *Pennoyer v. Neff*, supra.)

A state may not evade its constitutional obligations by re-defining the concepts involved. To say that *situs* of an intangible and therefore jurisdiction is wherever a state may choose to define it to be, is to say that the limits of a state's jurisdiction are wholly self-imposed.

A domiciliary state cannot acquire jurisdiction over out-of-state intangible assets by calling itself the *situs*, for the Supreme Court of the United States under such circumstances has found such a domiciliary decree to be violative of due process under the fourteenth amendment and not entitled to full faith and credit. (*Baker v. Baker, Eccles & Company*, supra; and *Iowa v. Slimmer*, supra.) To the same effect is *Overby v. Gordon*, 177 U. S. 214, 20 S. Ct. 603, 44 L. Ed. 741, where a Georgia decedent had a large bank account in Washington, D. C. The supreme court there said:

"Now, it is undeniable that the sovereignty of the State of Georgia and the jurisdiction of its courts . . . did not extend to or embrace the assets of the decedent situated within the territorial jurisdiction of the District of Columbia . . ." (p. 223.)

A garnishment case having direct bearing is *Chicago, Rock Island & Railway v. Sturm*, 174 U. S. 710, 19 S. Ct. 797, 43 L. Ed. 1144, reversing 58 Kan. 818, 51 Pac. 1100, where the Kansas court attempted to disregard the seizure of a debt by a foreign court on the ground that by its definition, *mobilia sequuntur personam*, the *situs* of the debt was in Kansas. The railroad in question had been garnisheed by an Iowa writ for a Kansas workman's wages, and the workman immediately sued for the same wages in a Kansas court. In the eyes of the Kansas court, Iowa was without jurisdiction. The United States Supreme Court thought otherwise. *Situs* of the debt was wherever the debtor might be served. Iowa had by its process seized the debt and it had jurisdiction. The Kansas judgment was therefore reversed outright for failure to give full faith and credit to the Iowa proceedings.

G. S. 1955 Supp., 59-303, when it directs that judicial proceedings of courts of other states "shall be void and of no effect" has written the full faith and credit clause in the negative. Only the United

States Supreme Court is "the final arbiter when the question is raised as to what is a permissible limitation on the full faith and credit clause." (*Williams v. North Carolina*, supra; and *Johnson v. Muelberger*, 340 U. S. 581, 71 S. Ct. 474, 95 L. Ed. 552.) The invalidity of a statute which rewrites a Federal Constitution clause in the negative need not be labored.

The administration proceedings of the probate court of Jackson County, Missouri, respecting the intangible property and all steps and orders therein, properly presented to the probate court in Johnson County, Kansas, in the form of documents duly authenticated in accordance with the Acts of Congress relating to full faith and credit are entitled to full faith and credit within the meaning of Art. 4, Sec. 1, of the United States Constitution, by the courts of the state of Kansas.

It is elementary that judicial proceedings upon property in the absence of jurisdiction over that property, lacks and denies due process of law within the meaning of the fourteenth amendment. A statute which permits and directs such judicial proceedings is void for the same reason. This is exemplified in the Restatement of Law, Conflict of Laws, § 43:

"If a State attempts to exercise power by creating interests with respect to persons or things which it has no jurisdiction to create, its action is in violation of the Fourteenth Amendment to the Constitution and is void in the State itself. The Supreme Court of the United States may review all cases whether from a lower Federal court or from a State court of last resort which involve a question of the exercise of power on the part of a State when it has no jurisdiction." (Comment a.)

The order of the probate court appealed from directing appellee to exhibit to the appraisers property not within her possession or control, but which was being administered upon in a proper proceeding in the probate court of Jackson County, Missouri, was void and beyond the jurisdiction of the court to enter, as in conflict with the due process clause and the equal protection clause of the fourteenth amendment to the United States Constitution, and as an order with which it was impossible for appellee to comply. Similarly, enforcement of 59-303, *supra*, would deprive appellee of property without due process of law by rendering appellee personally liable for failure to account to the probate court of Johnson County, Kansas, for assets of the estate of the decedent which cannot lawfully be brought within, and have at no time come within, the possession

or control of appellee in her capacity as executrix of the estate of the decedent. The purported attempt of the Kansas probate court to administer upon the intangibles was in violation of the fourteenth amendment, and so also is the legislative "authorization" therefor in 59-303, *supra.* It is, therefore, unconstitutional and void for this additional reason.

G. S. 1955 Supp., 59-303, goes further and directs the Kansas Director of Revenue and Taxation to refuse to issue any inheritance tax order, waiver or clearance when another state proceeds to exercise its rightful jurisdiction over assets such as those involved in this case. It is designed to prevent any sister state from administering upon such property under threat of imposing a permanent cloud upon the title to all property in the estate. Kansas is without power to interfere with the jurisdiction of other states in this manner. The situation is analogous to that involved in an attempt to impose unconstitutional restrictions upon the right of a foreign corporation to do business in the state. (*Terral v. Burke Constr. Co.,* 257 U. S. 529, 42 S. Ct. 188, 66 L. Ed. 352.)

Appellee concedes that Kansas has the authority to levy inheritance taxes upon the intangibles owned by a domiciliary decedent, but appellee hastens to add that Kansas may not employ that authority to reach an unconstitutional end—prohibition of resort to foreign courts of competent jurisdiction. This, we concede.

Further, 59-303, *supra,* is void and of no force and effect for the reason that its enforcement would deprive appellee of property without due process of law, in violation of the fourteenth amendment to the Constitution of the United States, by imposing a permanent cloud upon the title to property held by the appellee as a fiduciary and by causing the removal of appellee from her lawful and gainful duty as executrix of the estate of the decedent, unless appellee performs acts which are unlawful and criminal under the laws of the state in which they must necessarily be performed.

Appellants contend in line with their public policy argument that if Kansas has power to impose an inheritance tax on the devolution of intangibles of a resident decedent, and power to provide means for the assessment of those taxes, Kansas must likewise have the power to draw to itself exclusive probate administration upon those intangibles. Otherwise, it is said, the Kansas Director of Revenue has no way of determining whether the devolution and appraisal of those intangibles is properly effected,

and consequently whether Kansas has received her due share of inheritance taxes. In support of 59-303, *supra*, the sole argument of the appellants is to the effect that the power to tax carries with it the power to provide for the enforcement and collection of the tax in any way it wishes. They urge this court, in view of the rules of statutory interpretation recently compiled in *State, ex rel., v. Fadely*, 180 Kan. 652, 308 P. 2d 537, relating to the constitutionality of statutes, that 59-303, *supra*, should be construed to be constitutional as a tax collection statute. They concede that the statute is not directly worded as such but contend that in a negative way this was the intention of the legislature. This we cannot accept. The statute is written in plain and unambiguous language, and the power which the legislature seeks to have this state invoke through the statute is clear. In view of the authorities cited we regard appellants' argument as wholly untenable. Furthermore, Kansas does not have and never has had authority to levy inheritance taxes on tangible property not situated in the state. (*Treichler v. Wisconsin*, 338 U. S. 251, 70 S. Ct. 1, 94 L. Ed. 37; and *Frick v. Pennsylvania*, 268 U. S. 473, 45 S. Ct. 603, 69 L. Ed. 1058.)

Appellants have failed to distinguish between the state's jurisdiction to administer upon intangibles and its jurisdiction to levy inheritance taxes upon them. There is no necessary connection between these jurisdictions. The inheritance tax jurisdiction of a state has been the subject of a long series of supreme court decisions. During the forty-year period extending from 1903 to 1942 the supreme court wavered between confining inheritance tax jurisdiction to the domicile of the decedent, a rule which found its firmest enunciation in *First National Bank v. Maine*, 284 U. S. 312, 52 S. Ct. 174, 76 L. Ed. 313, and its present rule that the due process clause is not offended by double, triple or quadruple inheritance taxation so long as the taxing state has "some connection" with the intangibles. The current view is expressed in a series of three cases, *Curry v. McCanless*, 307 U. S. 357, 59 S. Ct. 900, 83 L. ed. 1339; *Graves v. Elliott*, 307 U. S. 383, 59 S. Ct. 913, 83 L. ed. 1356; and *State Tax Comm'n v. Aldrich*, 316 U. S. 174, 62 S. Ct. 1008, 86 L. ed. 1358. In the *Aldrich* case it is said at page 181:

". . . In line with our recent decisions . . . we repeat that there is no constitutional rule of immunity from taxation of intangibles by more than one State. . . ."

And again:

". . . Another State which has extended benefits or protection, or which can demonstrate 'the practical fact of its power' or sovereignty as respects the shares (*Blackstone v. Miller*, p. 205), may likewise constitutionally make its exaction . . ." (pp. 181, 182.) (Note that the Supreme Court of the United States has again resorted to citing *Blackstone* which was previously overruled by reason of changing tax policy.)

Thus, it is quite possible for inheritance taxes to be levied upon a share of corporate stock by (1) the domicile of the decedent, (2) the state where the transfer books are kept, (3) the state where the certificate is located, and (4) the state of incorporation.

Jurisdiction to administer upon property cannot thus be derived from jurisdiction to levy inheritance taxes on that property. Appellants have cited us to no authorities to the contrary. This court may well conclude that counsel, after diligent search, has not been able to find any. (*McCoy v. Fleming*, 153 Kan. 780, 113 P. 2d 1074.)

Appellants argue that the domicile is the natural or optimum place at which to administer upon a decedent's intangible property. In this connection, appellants have used various expressions throughout their brief. Let us see whether it is more "proper" or "practical," and whether it "works best" to have all intangibles of the decedent administered at the domicile; and let us see whether appellants' general statements about greater efficiency, less complication and better control are supported by fact. Administration of estates involves more than merely interpreting wills and decreeing the devolution of property. It also involves, among other things, the collection, inventory, appraisal and sale of assets and the determination and payment of creditors' claims. How is a Kansas domiciliary representative to collect a bank account held in a Missouri bank? How is such a representative to collect on a promissory note which is held by another in a different state? How is a bond to be collected when the certificate is not in Kansas? How is stock to be transferred without possession of the certificate? How are any of them to be inventoried and appraised in Kansas? Shall the domiciliary representative collect such assets through the medium of midnight forays into other states? He has no other alternative if other states, such as Missouri, choose to vest in their own courts control over such assets. Of course, he might wait until the debtor or the person holding the bonds or stock certificates journeys into Kansas and then institute an action in the Kansas courts, but this is hardly a remedy that is "efficient," "convenient" or "best."

Another significant difficulty with the concept of domicile as a universal *situs* should be mentioned. Domicile is often an elusive thing, as pointed out so eloquently by Justice Rutledge, dissenting, in *Williams v. North Carolina*, 325 U. S. 226, 65 S. Ct. 1092, 89 L. ed. 1577. (Reference is made to pages 257, 258 and 259.)

The insuperable difficulties attending a rule of unitary administration at the decedent's domicile is indicated by appellants' own authorities. (1 Beale, Conflict of Laws, § 51.1 (1935); and Restatement of Law, Conflict of Laws, §§ 50 through 53.)

One other contention of the appellants deserves mention. They have challenged the right of the state of Missouri to administer upon the shares of corporate stock through the medium of administering upon the stock certificates. Appellee's position is that as between the state of incorporation and the state where the certificate is located, the latter state having the certificate within its power, is entitled to administer upon and otherwise determine the title to the shares. Appellee contends that it is the modern view that the shares are so far merged into the certificate that the certificate embodies the shares and is equivalent to tangible personal property. These positions need not be labored extensively, since appellants' challenge of Missouri's position to administer upon the certificates does not show any right in Kansas to do so. If it be assumed for purposes of argument that Missouri's administration of the corporate shares of the non-Missouri corporations is not entitled to full faith and credit, it still is perfectly plain that Kansas can have no concern or objection to that administration, because Kansas has no jurisdiction *in rem* over, and no control over, the *res*. How can Kansas control, collect and distribute these shares (some of which have been sold on the New York Stock Exchange by the Missouri executrix and the remainder of which are registered in her name as executrix)? A moment's analysis shows that where a certificate is in Missouri and the corporation is incorporated in a third state, the intangible property is wholly outside the borders of Kansas, as completely as a non-Kansas bank account. That being so, Kansas has no power over the shares.

Modern authorities adopt the mercantile theory—that the certificate *situs* has a superior jurisdictional claim over the state of incorporation. It was held in 1900 in the case of *Jellenik v. Huron Copper Mining Co.*, 177 U. S. 1, 20 S. Ct. 559, 44 L. ed. 647, that the state of incorporation had a pre-eminent claim to jurisdiction over

the shares. That decision was influential in cases of decedent's estates for some time thereafter in the state courts. (72 A. L. R. 179.) Those holdings were prior to the general adoption of the Uniform Stock Transfer Act—a statute which gives promise of consolidating the mercantile viewpoint of stock transfers everywhere. The mercantile viewpoint sanctions administration upon the certificate, regardless of the state of incorporation and regardless of the decedent's domicile. (See *Bowles v. R. G. Dun-Bradstreet Corp.,* 25 Del. Ch. 32, 12 A. 2d 392; and *Lockwood v. U. S. Steel Corporation,* 209 N. Y. 375, 103 N. E. 697.) The Supreme Court of the United States changed its theory of jurisdiction away from the holding in the *Jellenik* case in *Disconto-Gesellschaft v. U. S. Steel Co.,* 267 U. S. 22, 45 S. Ct. 207, 69 L. Ed. 495. This is the last decision of the United States Supreme Court having a direct relationship to the subject. Following the *Disconto* case the authors of the Restatement of Law, Conflict of Laws, § 477, adopted the mercantile theory. The Restatement says:

"The administrator in possession of the certificate can administer it in the same way as any other chattel which is part of the estate . . . Should the corporation, upon presentation of the certificate and of sufficient evidence of the appointment of the administrator, refuse to transfer the shares to the administrator or his transferee, such administrator or his transferee respectively can proceed against the corporation by suit in his own name even though there is a local administrator in the forum." (Comment *c.*)

Of interest is the position taken by the Missouri court. In *Lohman v. Railway Company,* 326 Mo. 819, 33 S. W. 2d 112, the Missouri supreme court gave full faith and credit to an administration in New York of certificates of a Missouri corporation, saying:

"The Disconto-Gesellschaft case seems conclusively to establish the rule that shares of stock in a corporation, represented by appropriate certificates of stock, constitute property in themselves, and not merely evidence of ownership, and have a situs for some purposes elsewhere than in the state where the corporation is domiciled. That case announces the latest and the controlling rule of the United States Supreme Court. . . .

"The certificates of stock held by Upmann must, therefore, be regarded as having the character of personal property in themselves and a situs for some purposes in the State of New York. . . ." (pp. 828, 829.)

In *Toner v. Conqueror Trust Co.,* supra, this court cited *Iowa v. Slimmer,* supra, "As recognizing the proposition that the presence of a negotiable instrument in the state is sufficient upon which to found an administration upon the estate of a deceased nonresident . . ." (p. 664.)

The recent general adoption of the Uniform Stock Transfer Act is an important development. This statute with little variations has been enacted in all forty-eight states, Hawaii, Alaska and the District of Columbia. (6 U. L. A. 1956 P. P. The act is found in the Kansas statutes beginning at G. S. 1949, 17-4801.) In brief, it provides that title to shares of stock can be transferred only by delivery of the certificate. The actual title to the shares as against the rest of the world is governed by possession of the certificate. While an owner may be permitted to post bond if the certificate is lost or destroyed, in no other circumstances can a transfer of any kind be recognized unless the certificate is produced. On this subject a leading authority has been led to say:

". . . This statute, though it does not specifically deal with the question of administration, in all other respects seems to' accept the mercantile theory. . . .

. . . . . . . . . . . . . . .

"It is submitted that the Uniform Stock Transfer Act should be construed as adopting the mercantile view whole-heartedly, including the treatment of the certificates as controlling the shares for purposes of administration." (3 Beale, Conflict of Laws, § 477.2 [1935].)

It must be noted that the statute does not contain a specific provision respecting *situs* of stock for administration purposes, but it does refer to administrators in the second section. The act does not enlarge the power of the trustee, executor, administrator or other fiduciary to make a valid endorsement, that is, an executor or trustee must show his authority to make a transfer, by exhibition of a court order or a power in the will or trust instrument, as he did before the act was passed, but this provision has no effect on the jurisdiction of courts to declare ownership.

It follows that *situs* for administration purposes of all shares of corporate stock, as well as all other intangible property, under the facts and circumstances in the instant case is in the state of Missouri, since that state has the power to exercise control over the intangibles within her territorial borders.

Having found no error in the conclusions of law adopted by the district court, the judgment entered thereon should be and hereby is affirmed.