No. 55,021

CONNIE S. YOUNG, *Plaintiff-Appellant,* v. DAVID WHEELER, Executor of the Estate of Frank J. Keefer, Deceased, *Defendant-Third Party Plaintiff and Appellee,* v. CREDIT BUREAU OF LIBERAL, INC., *Third Party Defendant,* and JOE D. NEWMAN, *Intervenor,* v. CONNIE S. YOUNG, DAVID J. WHEELER, Executor of the Estate of Frank J. Keefer, Deceased, and CREDIT BUREAU OF LIBERAL, INC. *Defendants in Intervention.*

(676 P.2d 748)

Opinion filed February 18, 1984.

*Stephen M. Joseph,* of Joseph, Robison & Anderson, of Wichita, argued the cause and was on the brief for appellant.

*Paul A. Wolf,* of Brollier & Wolf, of Hugoton, argued the cause and *Kim R. Schroeder,* of the same firm, was with him on the brief for appellee.

*Robert H. Alexander, Jr.* and *Bill Zuhdi,* of Linn & Helms, of Oklahoma City, and *Winton A. Winter, Jr.,* of Stevens, Brand, Lungstrum, Golden & Winter, of Lawrence, were on the brief for cross-appellant, Joe D. Newman.

The opinion of the court was delivered by

HOLMES, J.: Plaintiff-appellant Connie S. Young and intervenor-cross-appellant Joe D. Newman both appeal from the trial court's denial of their conflicting claims to decedent's corporate stock in the Credit Bureau of Liberal, Inc. The trial court found their claims to be barred by the nonclaim statute, K.S.A. 59-2239.

The facts, though complex, are not in dispute. The decedent, Frank J. Keefer, acquired all of the 6000 shares of stock in the Credit Bureau on September 23, 1974. He immediately sold 667 shares to plaintiff Connie Sue Young. The corporation issued Keefer one certificate representing his remaining 5,333 shares.

On May 13, 1976, plaintiff and Keefer, as sole stockholders of the corporation, entered into a written mutual post-death stock option contract. This agreement provided that if either of them died the survivor would have the first option to acquire the decedent's stock by cash payment to the decedent's estate. The contract specified that if Keefer died first, plaintiff Young could purchase his 5,333 shares for one thousand dollars and if Young

died first, Keefer could buy her 667 shares for one hundred dollars.

Although he remained a resident of Stevens County, Kansas, in 1979 Keefer moved into Newman's home in Balko, Oklahoma. Keefer continued to maintain his mobile home in Liberal, Kansas. On March 7, 1980, Keefer and Newman entered into a written contract for the sale of Keefer's 5,333 shares of stock to Newman for three thousand dollars. Although Newman wrote a check in that amount the same day, the stock certificate was never assigned or delivered to Newman.

Frank Keefer died testate on April 3, 1980, a resident of Stevens County, Kansas. Among decedent's papers found after his death at the Newman home in Balko, Oklahoma, was a copy of the contract for the sale of the Credit Bureau stock, and the check from Newman for $3,000.00. The check was not endorsed. No one could locate the Credit Bureau stock certificate.

Probate proceedings were commenced in the District Court of Stevens County, Kansas. Notice to creditors was first published on April 17, 1980. Keefer's will was admitted to probate, and defendant David J. Wheeler was appointed executor of the estate on May 13, 1980. Decedent's will, dated January 13, 1975, after providing for payment of expenses, devised and bequeathed the remainder of his estate to the Frank J. Keefer trust. A codicil to this will, executed on November 5, 1979, bequeathed and devised all of Keefer's Oklahoma real estate, and livestock, farm machinery, equipment, and farm supplies located within that state to Newman. Prior to the admission of the will to probate, plaintiff attempted to exercise her option to purchase the 5,333 shares of Credit Bureau stock by mailing to the attorney for the proposed executor a check for $1,000.00, payable to the estate. The attorney, Paul Wolf, acknowledged receipt of the check in a May 1, 1980, letter to plaintiff, and at the same time informed her of Newman's claim to the stock. After defendant Wheeler was appointed executor, he and Wolf conferred about the conflicting claims. On May 15 the attorney returned to Young and Newman their respective checks and, in a joint letter, advised that due to the conflicting claims neither would be recognized and he recommended both claimants seek legal counsel. Thereafter, an inventory and appraisal was filed in the Keefer estate which included the 5,333 shares of Credit Bureau stock. Neither Young

nor Newman instituted any challenge in the probate proceedings to strike the stock from the inventory or to enforce their respective claims to the stock.

Instead Young instituted this action in the District Court of Stevens County on November 20, 1980, naming the executor of decedent's estate as defendant and seeking specific performance of the option agreement. The defendant executor answered alleging as an affirmative defense that plaintiff's claim was barred by K.S.A. 59-2239. Defendant Wheeler also filed a counterclaim and a third party petition against the corporation, as an alternative pleading to recover funds for decedent's estate from either plaintiff or the corporation in the event plaintiff succeeded in her action. The basis for the counterclaim and third party petition was for money loaned by Keefer to the corporation during his lifetime. Newman did not intervene in this action until April 27, 1981. On June 30, 1980, the Keefer will and codicil were admitted to probate in Beaver County, Oklahoma, and Wheeler was appointed as executor for the ancillary proceedings. Thereafter, the Beaver County court, in reliance upon its interpretation of the Oklahoma statutes, found that it did not have jurisdiction of any personal property, tangible or intangible, in Oklahoma and that all such property was subject to the jurisdiction of the domiciliary proceedings in Stevens County, Kansas.

On November 19, 1981, plaintiff filed an amended petition in the instant action adding an alternative theory and claim to the effect that Keefer had delivered the Credit Bureau stock to Young in compliance with the option contract. The case proceeded to trial beginning March 1, 1982, with the specific issues to be determined stated in the pretrial order as: "The sole issues to be tried in this matter are who was the owner of the stock at the time of the death of the decedent and who had possession of the stock." At the trial plaintiff testified that she thought Keefer had given her the corporate stock and that the certificate must have been destroyed in a fire at her Oklahoma home. Unbeknownst to plaintiff, during the week before trial started, Newman found the Credit Bureau stock certificate in a suitcase belonging to Keefer. The suitcase contained abstracts of title to Keefer's real property and other personal papers of Keefer. The suitcase had been kept by Keefer in his room at the Newman residence. After Young had testified that Keefer had delivered

the stock certificate to her and that it had subsequently been destroyed in a fire, Newman produced the certificate. Following this development, Young took the position that Newman had visited her at her home prior to the fire and must have taken the stock certificate without her knowledge or permission.

Following the trial, the court found that the Credit Bureau stock was owned by Keefer at the time of his death and that Keefer was in possession of the stock certificate at the time of death. Both findings are adequately supported by the evidence and the court found that as neither Young nor Newman had filed claims in the Stevens County probate proceedings within the time allowed by the nonclaim statute, their claims to the Credit Bureau stock were barred by K.S.A. 59-2239. Both Young and Newman contend that as the stock certificate was physically located in Oklahoma, the Kansas court had no jurisdiction of it, that it was not part of the Kansas estate and therefore the Kansas nonclaim statute is inapplicable. Young and Newman both rely on our decision in *In re Estate of DeLano,* 181 Kan. 729, 315 P.2d 611 (1957). In *DeLano* the decedent died a resident of Kansas, and domiciliary probate proceedings were conducted in Johnson County. Intangibles owned by the decedent were located in Jackson County, Missouri, and ancillary administration proceedings were instituted in that county. The ancillary executrix took possession, inventoried and administered the intangibles and refused to cede administration over the intangibles to the domiciliary executor. We stated:

"The first consideration in this opinion will be devoted to the question of jurisdiction to administer upon intangible personal property and the correlative question of *situs* of intangibles for administration purposes.

"Two distinct legal propositions entirely separate should be borne in mind. First, that the state where personal property is located (whether tangible or intangible personal property) has full power to administer upon it, pay creditors out of it, and dispose of it within constitutional limitations, or, at its option to permit the courts and administrators of other states to take possession and administer it. Second, under normal circumstances the court where the intestate's personal property is located will look to the law of the decedent's domicile to determine heirship, *i.e.,* to determine the persons who succeed to the property and the proportions in which they take." 181 Kan. at 736.

Applying those principles to the facts of that case, we concluded:

"We therefore hold in view of the foregoing authorities that the courts of Missouri have jurisdiction to administer upon the intangible property in question and that the courts of Kansas do not have jurisdiction to administer upon such

intangible property, unless the state of Missouri cedes its jurisdiction over such property to the domiciliary executrix in Johnson County, which it may or may not do." 181 Kan. at 742.

While much of what was said in *DeLano* remains true today, it must be recognized that *DeLano* was decided under a statute (G.S. 1949, 59-303 [1955 Supp.]) which purported to vest exclusive jurisdiction in the Kansas courts to administer the personal property assets of a Kansas decedent and to divest any other state of jurisdiction even when the property was located in the other state. In a scholarly opinion by Justice, now Chief Justice, Schroeder the statute was properly found unconstitutional. The controlling statute today is considerably different. K.S.A. 59-1401 provides:

"The executor or administrator shall have a right to the possession of all the property of a resident decedent, except the homestead and allowances to the surviving spouse and minor children. *He or she shall marshal all tangible personal property owned by a resident decedent located in the state of Kansas and all intangible personal property owned by a resident decedent wherever located, either directly or by ancillary administration, and shall within nine (9) months from the date of death take possession of all tangible personal property located in this state and all intangible property wherever located,* the same to be held, administered and finally distributed as provided by law: Provided, however, That nothing herein shall require an executor or administrator of a resident decedent to take possession of intangible personal property being administered in another jurisdiction, if the court wherein such administration is pending refuses to authorize such delivery of possession." (Emphasis added.)

The constitutionality of this statute is not challenged in this appeal.

It appears to be the position of Young and Newman that so long as the stock certificate was in Oklahoma, even though no one knew it was there and it was presumed lost or destroyed, Kansas had no jurisdiction to administer upon the stock. If in fact the certificate had been lost or destroyed Kansas certainly would have been the proper forum to assert the interests of the estate in the stock of the Credit Bureau. The Oklahoma court found it had no jurisdiction of Keefer's personal property and clearly ceded jurisdiction over such property to Kansas. Absent an assertion of jurisdiction by another state over intangible personal property of a Kansas decedent, Kansas is the logical and proper forum to administer such property. Many Kansas residents own intangibles located in other states and to require foreign probate of all such assets would be cumbersome, expensive, and inefficient. It

is noted that in the instant case neither Young nor Newman made any attempt to assert a claim to the Credit Bureau stock in Oklahoma although Young maintained the stock certificate was burned in a fire at her Oklahoma residence and Newman maintained the stock was in his possession. We conclude that under the facts herein, the Kansas court properly had jurisdiction to administer the personal property of the decedent located in Oklahoma.

Given this jurisdiction, the only remaining question is whether plaintiff's and intervenor's claims were barred by the Kansas nonclaim statute, K.S.A. 59-2239, which provides:

"(1) All demands, including demands of the state, against a decedent's estate, whether due or to become due, whether absolute or contingent, including any demand arising from or out of any statutory liability of decedent or on account of or arising from any liability as surety, guarantor, or indemnitor, and including the individual demands of executors and administrators, not exhibited as required by this act within six (6) months after the date of the first published notice to creditors as herein provided, shall be forever barred from payment, except that the provisions of the testator's will requiring the payment of a demand exhibited later shall control."

The words "all demands" as used in this statute were intended to be all-inclusive and to include claims or demands of every type and character against a decedent's estate and to any portion thereof, except in particular cases where a statute may expressly provide otherwise. *In re Estate of Grindrod,* 158 Kan. 345, Syl. ¶ 5, 148 P.2d 278 (1944). In *Burns v. Drake,* 157 Kan. 367, 371, 139 P.2d 386 (1943), we stated:

"We cannot agree that the word 'demands' refers solely to claims to be paid in money. In view of the fundamental purposes sought to be accomplished by the new code we think the legislature intended the term 'demands' as here used to be all-inclusive—to include all demands against the estate, whether legal or equitable in character . . . . All property in the estate is drawn into administration. Upon final settlement the court must determine the heirs, devisees, legatees, and by decree make proper assignment. The determination of an issue such as that here involved [specific performance of an alleged oral contract by decedent to convey real estate by deed or will] is as much a prerequisite to distribution as any money demand. To hold otherwise would defeat one of the purposes of the code—the plain legislative intent to unify administration and expedite the closing of decedent's estates."

See also *Gantz v. Bondurant,* 159 Kan. 389, Syl. ¶ 2, 155 P.2d 450 (1945); *In re Estate of Bourke,* 159 Kan. 553, Syl. ¶ 3, 156 P.2d 501 (1945); and *In re Estate of Bowman,* 172 Kan. 17, 21, 238

P.2d 486 (1951). In the recent case of *Union Nat'l Bank & Trust Co. v. Estate of Werning,* 233 Kan. 671, 665 P.2d 192 (1983), Justice McFarland stated, "Exceptions from the requirement of having to file claims against a probate estate are not favored by law." 233 Kan. at 675. In *Werning* we quoted one recognized authority to the effect that:

" '[I]n general the course of legislative and judicial thought has been that it is better policy to deny exceptions to the bar of the nonclaim statute rather than to impair its final effect by allowing exceptions, however meritorious.' Atkinson, Law of Wills § 127, p. 691 (2d ed. 1953)." 233 Kan. at 675.

The original notice to creditors was first published April 17, 1980. Plaintiff's petition was filed November 20, 1980, seven months and three days later and Newman did not intervene until April 27, 1981, over a year after the first publication. The court was correct in holding both claims constituted demands as contemplated by the statute and were barred by K.S.A. 59-2239.

The judgment is affirmed.