No. 51,422

## In the Matter of the Estate of Sarah R. Reed, Deceased.

(625 P.2d 447)

Opinion filed March 25, 1981.

*Keith A. Greiner,* of Keith A. Greiner, Chartered, of Emporia, argued the cause and was on the brief for appellants Indiana University Foundation and Pauline Winnick.

*John G. Atherton,* of Atherton, Hurt & Sanderson, of Emporia, argued the cause and was on the brief for appellees and cross-appellants George Andrew Reed, Margaret Moore, Marie Siedschlag and Dorothy Schwab.

*Elvin D. Perkins,* of Perkins & Hollembeak, Chartered, of Emporia, argued the cause and was on the brief for appellee Ruth C. Schillinger, Administrator of the Estate of Sarah R. Reed, Deceased.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by petitioners, Pauline Winnick and Indiana University Foundation, from an order of the Lyon District Court refusing original probate to a document which petitioners contend is the will of Sarah R. Reed, deceased. The issue is whether that instrument may be construed as a will under our statutes.

The facts are undisputed. Sarah R. Reed died in the Whippoorwill boating accident on Lake Pomona near Vassar, Kansas, on June 17, 1978. At the time of her death, she was Director of the School of Library Science at Emporia State University, and she was a resident of Lyon County, Kansas. Before she came to Kansas she was Assistant Dean of the Graduate Library School at Indiana University in Bloomington, Indiana. While she was living in Indiana she wrote out, in her handwriting and upon a sheet of stationery bearing her name at the top, the following document:

"SARAH R. REED

June 1, 1973

"This is to indicate my wishes should anything happen to me during the period between now and when I make out a will.

"I would like for the following people to have any of my personal and household effects they want: Margaret Griffin (Greenwood Ave.) and Mildred Lowell (Mrs. Wayne) of Bloomington and Pauline Winnick (2800 Quebec Ave. N.W., Washington, D.C. - 201-244-6964). The remaining jewelry goes to Mrs. Robert Johann, 4700 San Jacinto Terrace, Fallbrook, Calif. 92028, since most of it came from her.

"All remaining property including contents of First National Bank Safety Deposit Box goes to I. U. Foundation to be added either to the GLS Birthday Fund or to any other GLS fund where it is used for support for GLS Ph.D. students.

"Witnessed June 2, 1973

> [signed] "Benjamin F. Speller, Jr.
> [signed] "Bernard M. Fry
> [signed] "Clara McLeod"

The instrument contains no signature in the handwriting of Sarah R. Reed; her name appears only in the engraving at the top of the page.

Shortly after Sarah R. Reed's death, a special administrator was appointed; later, the special administrator filed a petition for the issuance of letters of administration, alleging that Sarah R. Reed died intestate. Attached to the petition was the document copied above, which had been found among the deceased's possessions. Petitioner alleged that the document was not a duly executed will, but by reason of its contents "petitioner believes that the Court and the persons named in said instrument should be apprised of the existence of said instrument." An order for hearing was entered and notice given. Indiana University Foundation answered, denying that the decedent died intestate and denying that the instrument dated June 2, 1973, was not a will. Hearing on the petition for letters of administration was held September 29, 1978; both Pauline Winnick and the Foundation appeared by counsel. The court found that Sarah R. Reed died intestate, but added "that the Court's finding that said Sarah R. Reed died intestate is subject to the introduction of any evidence that may rebut the finding of intestacy, which said evidence must be submitted to the Court within the statutory period." Letters of administration were issued and administration of the estate proceeded.

Afterwards, and within nine months of the date of death of the decedent, both the Foundation and Pauline Winnick filed petitions for admission of the document dated June 2, 1973, as the last will and testament of Sarah R. Reed, deceased. A consoli-

dated hearing was held on the petitions for probate of will on June 12, 1979. The administrator appeared in person and by counsel; all other parties appeared by counsel. At the conclusion of the hearing the court found that the instrument offered for probate "does not constitute a will pursuant to K.S.A. 59-606 because it is not signed at the end or pursuant to K.S.A. 59-609 because the term 'subscribed' in the proviso of such statute means 'signed at the end', and therefore the petitions for probate of will filed by Indiana University Foundation and Pauline Winnick are dismissed." This appeal followed.

The controlling issue is whether the instrument, admittedly executed in Indiana, was "subscribed by the testator" as is required by the proviso of K.S.A. 59-609. Petitioners contend the term "subscribed" in the proviso should be interpreted to mean "signed or authenticated as one's own." In support of this contention, petitioners call our attention to K.S.A. 59-2230, which allows foreign probated wills to be admitted to probate in Kansas upon proof of the foreign probate, and contend that if K.S.A. 59-609 is construed to require signing at the end, such a construction would bar the probate in this state of wills executed in jurisdictions which do not require signing at the end, and would be contrary to 59-2230. Also, petitioners contend that since the legislature used the words "signed at the end" in 59-606 and "subscribed" in 59-609, the legislature must have intended a different meaning for those terms. Petitioners rely upon *State v. Queen,* 103 Kan. 632, 176 Pac. 111 (1918), where we held that an information in a criminal case was "subscribed," as required by statute, where the signature line for the county attorney at the bottom of the information was left blank, but an affidavit to the truth of the information, which immediately followed, was signed and sworn to by that officer. Also relied upon is *Southwest Engineering Co., Inc. v. Martin Tractor Co., Inc.,* 205 Kan. 684, 473 P.2d 18 (1970), where we held that the handprinted name, "Ken Hurt, Martin Tractor, Topeka, Caterpillar" was a sufficient signature on a bid form to bind the bidder, Martin Tractor Co., Inc., relying upon a section of the U.C.C., K.S.A. 84-1-201 (39), which reads:

"(39) 'Signed' includes any symbol executed or adopted by a party with present intention to authenticate a writing."

and the official comment which states:

"Authentication may be printed, stamped or written; it may be by initials or by thumbprint. It may be on any part of the document and in appropriate cases may be found in a billhead or letterhead."

We turn first to the history of our statutes governing the execution of wills. Prior to statehood, the Territorial Legislature of 1859 adopted an act providing that except for oral wills, all wills "must be in writing, witnessed by two competent witnesses, and signed by the testator." Chapter 131, Laws of 1859, codified as Chapter 215, General Laws of Kansas, 1862. That act was repealed, and new statutes governing wills were enacted in 1865. The new act required that all wills be signed "at the end thereof." It provided:

"Every last will and testament   .   .   .   [except verbal wills, made in the last sickness] shall be in writing, and signed at the end thereof by the party making the same, or by some other person in his presence, and by his express direction, and shall be attested and subscribed in the presence of such party by two or more competent witnesses, who saw the testator subscribe, or heard him acknowledge the same." L. 1865, ch. 86, § 2.

The substance of the 1865 act has been carried forward in our probate code through the years. See G.S. 1868, ch. 117, § 2; R.S. 1923, 22-201; G.S. 1935, 22-202; and G.S. 1949, 59-606. Our present statute, K.S.A. 59-606, bears a remarkable resemblance to the act of 1865. It reads:

59-606. "Every will, except an oral will as provided in K.S.A. 59-608, shall be in writing, and signed at the end thereof by the party making the same, or by some other person in the presence and by the express direction of the testator and shall be attested and subscribed in the presence of such party by two or more competent witnesses, who saw the testator subscribe or heard the testator acknowledge the same."

Our first statute, other than procedural statutes, dealing specifically with wills executed outside this state was enacted in 1911. It reads:

"A last will and testament executed without this state in the mode prescribed by the law, either of the place where executed or of the testator's domicile, shall be deemed to be legally executed, and shall be of the same force and effect as if executed in the mode prescribed by the laws of this state; provided, said last will and testament is in writing and subscribed by the testator." L. 1911, ch. 336, § 1.

With slight modification, this now appears as K.S.A. 59-609, which reads:

59-609. "A will executed without this state in the manner prescribed by this act, or by the law of the place of its execution, or by the law of the testator's residence

either at the time of its execution or of the testator's death, shall be deemed to be legally executed, and shall have the same force and effect as if executed in compliance with the provisions of this act: *Provided, Said will is in writing and subscribed by the testator."* (Emphasis supplied.)

K.S.A. 59-609 has not been heretofore construed by this court, but we have had numerous cases dealing with the acts necessary to execute a will under 59-606. *In re Estate of Bond,* 159 Kan. 249, 153 P.2d 912 (1944), is a case in which the opinion discusses the necessity for a signature by the testator at the end of a will. Justice Smith, speaking for a unanimous court, says at 252-55:

"It will be noted the above statute [G.S. 1943 Supp. 59-606] requires that every will except an oral will . . . shall be in writing and signed at the end thereof by the party making it or by some other person for him in his presence. . . .

" . . . The fact is that aside from an oral will . . . there is only one way to make a will in Kansas and that is by signing in the presence of two witnesses who saw the testator sign or heard him acknowledge it.

"It will be noted, too, that this statute provides that the will shall be signed at the end.

"Section 289 of 1 Page on Wills, Lifetime ed. contains an interesting statement on this provision. It is as follows:

" 'The English Wills Act of 1837, provided that the will must be signed "at the foot or end thereof." Legislation of this general type has been adopted in many states of the Union; Although frequently the American statutes use the word "end" without the word "foot." In passing this statute, the legislature intended to do away with the necessity of inquiring into the actual intention of testator in writing his name in the body of the will, and to avoid inquiry as to whether the instrument in question is intended as a preliminary draft or as a final and complete instrument. Whether they also intended to require the signature to follow the dispositive provisions so closely that no chance for interpolating words would be given, is discussed elsewhere. If this was the paramount intent of the legislature, they used language which went far beyond the requirements of the situation. The intention of the testator, even when manifest on the face of the will, has become immaterial; and a will which is not signed at the end thereof is invalid.' (p. 553.)

"[T]his statement shows the background for the passing of a statute such as ours requiring a signature at the end.

. . . . .

"[T]he case with which we are dealing here is where there is no signature at all, simply the name of the testator appearing in the will itself.

"Admitting for the sake of argument that the testator intended the disposition to be made of his property which is provided in this instrument, we would still have the question that he did not proceed to do it in the proper way, that is, by signing his will at the end thereof. We prefer this strict construction of the statute to one which would tend to break down the formalities with which our legislature has seen fit to cloak the passing of property by devise.

. . . . .

"We can best reach the correct conclusion in this case by a reexamination of the

reasons for the provision that a will must be signed by the testator at the end. The object clearly was to change the rule followed in some jurisdictions, that the name of the testator written anywhere in the will in his own handwriting was a signature, provided he stated that he intended it so to be. It was the intention of our statute to provide that the name of the testator appearing anywhere in the body of the will itself was not to be regarded as a signature regardless of the declarations of the testator as was said in *Sears v. Sears,* 77 Ohio St. 104, 82 N.E. 1067, quoting from *Matter of Andrews,* 162 N.Y. 1:

" ' "It is undoubtedly true that from time to time an honest attempt to execute a last will and testament is defeated by failure to observe some one or more of the statutory requirements. It is better this should happen under a proper construction of the statute, than that the individual case should be permitted to weaken those provisions calculated to protect testators generally from fraudulent alterations of their wills." ' (p. 125.)

. . . .

"Since it appears that his purported will was not signed at the end thereof, as required by the statute, the evidence offered by the proponents of the will as to the intention of the testator was to no avail. The will should not have been ordered admitted to probate."

The case of *In re Marques' Will,* 123 N.Y.S.2d 877 (1953), involved a holographic will written by a New York resident while she was on a trip to California. The will was written there, and mailed to a cousin in New York; it consisted of two pages, all in the handwriting of the deceased. The first page contained the dispositive provisions, and was signed at the bottom by the testator; the second page contained only a listing of assets. The court said at 879-882:

"As the letter is unwitnessed it cannot be admitted to probate as a will under the provisions of section 21 of the New York Decedent Estate Law. However, *sections 22-a and 23* of the New York Decedent Estate Law provide that a will executed without the state in the mode prescribed by the law of the place of execution 'shall be deemed to be legally executed, and shall be of the same force and effect as if executed in the mode prescribed by the laws of this state, *provided, such will is in writing and subscribed by the testator'* and such will 'may be admitted to probate in this state.' . . .

. . . .

"The propounded instrument is written, dated and signed in the testatrix' own handwriting. Thus the formal requirements relative to execution prescribed by California law for holographic wills have been complied with.

"Although under California law, a holographic will need merely be 'signed' by the decedent, *under section 22-a and 23 of the New York Decedent Estate Law said instrument must be 'subscribed' by the decedent. 'Subscribed' means 'signed at the end.'* [Citations omitted.] The distinction is significant here, for under California law the contents of the second page of the letter would constitute part of the will. Under New York law, however, as the second page follows the signature, it cannot be admitted to probate as part of the will. Since the second

page contains no dispositive directions . . . it may be disregarded. . . . . . . .

"The court therefore finds . . . that the first page of the letter of March 23, 1947, was duly executed as a holographic will valid under the laws of California and of New York, and is entitled to probate in this court." [Emphasis supplied.]

The proviso of K.S.A. 59-609 has been a part of that section since its original enactment in 1911. Wills executed outside of this state are recognized, whether executed in the manner required by Kansas statutes or the laws of the state in which the will is executed, or by the laws of the state where the testator resided at the time of execution or at the time of his death; but the proviso requires two things of all such wills: they must be in writing, and they must be subscribed by the testator. An oral will, executed outside the confines of Kansas, is not valid in this state; and a will which is not subscribed by the testator is likewise of no force and effect here. What, then, is the meaning of "subscribed"?

K.S.A. 59-606 uses both "signed at the end" and "subscribed." It says:

"Every will . . . shall be in writing, *and signed at the end* thereof by the party making the same . . . *and shall be* attested and *subscribed* . . . by two or more competent witnesses, *who saw the testator subscribe* or heard the testator acknowledge the same." [Emphasis supplied.]

The act thus requires the testator to *sign at the end,* and it requires the witnesses, alternatively, *to see him subscribe.* It thus uses the terms synonymously. The term "subscribe" is defined in Black's Law Dictionary 1596 (4th ed. rev. 1968) as "to write underneath, as one's name; sub, under; scribere, to write; or, to write below a documentary statement." Webster's Third New International Dictionary 2278 (unabridged 1964) defines "subscribe" as "to write (as one's name) underneath." Webster's Seventh New Collegiate Dictionary 876 (1969) says: "1. to write (one's name) underneath . . . 2. to sign with one's own hand in token of consent or obligation by writing one's name beneath."

Thousands of commercial documents change hands daily; many are informal, hastily prepared, and routinely exchanged in accordance with the exigencies of commerce. Wills, on the other hand, are a formal expression of one's wishes, to take effect after the death of the maker. Much more formality has historically been required in the execution of wills than in the execution of day-to-day business and commercial papers. We decline to apply the provisions of the Uniform Commercial Code, relied upon by

the appellants, to the execution of wills. We adhere to what was said in *In re Estate of Bond,* 159 Kan. 249, and conclude that our statutes relating to the execution of wills must be strictly construed even though, in some rare situation, the intent of a testator may be frustrated. We hold that "subscribed," as used in K.S.A. 59-609, means "signed at the end," and that wills, whether executed within this state or elsewhere, must be signed at the end by the testator in order to be entitled to original probate within this state under that statute.

This is the majority view. In 94 C.J.S., Wills § 177 b (1), pp. 980-981, it is said:

"[I]n many states statutes now expressly require that wills shall be signed or subscribed by the testator at the end, and it has very generally been held that noncompliance with the requirement renders a will void in toto, and not entitled to probate, . . . So, also, where the statute requires the testator to 'subscribe' the will, it is held that he must sign the will at the end, the view being taken that there is no difference in the meaning of the word 'subscribe' and the phrase 'sign at the foot or end thereof.' "

In 79 Am. Jur. 2d, Wills § 236, p. 446, the rule is similarly stated:

"The statutes of most states fix the location of the signature and require that it must be at the foot or end of the will. . . .

" . . . A writing in the form of a will is a nullity where not signed at the end as required by law, and probate thereof should be denied."

We do not find the opinion in *State v. Queen,* 103 Kan. 632, to require a different resolution of the issue. The information in that criminal case contained a blank at the end for the signature of the prosecutor, which was not filled; however, an affidavit, which followed immediately, was signed and sworn to by that official. The statute required an information to be subscribed by the prosecuting attorney, and to be verified by his oath or that of some other person. We treated the one signature as sufficient. We said at 633:

"There is no occasion for two signatures, and the affidavit may be regarded as essentially a part of the information, which is literally 'subscribed' by the prosecuting officer."

One other argument advanced by appellants should be given attention; that is the argument that to give effect to the proviso of K.S.A. 59-609 would be contrary to the intent of K.S.A. 59-2230, which provides for the probate in this state of wills probated elsewhere. That statute does not mention "signing." K.S.A. 59-

2230 provides in substance that if it appears to the satisfaction of the Kansas court that the will has been duly proved and admitted elsewhere, and that it was executed according to the law of the place where it was made, it shall be admitted to probate here. The instrument before us had not been admitted for probate in Indiana when the proceedings below were held, but counsel advised on oral argument that it has since been admitted in that state. Be that as it may, Indiana statutes clearly require that a will be signed. Ind. Code Ann. § 29-1-5-3 [6-503](a) (Burns, 1980 Supp.), states:

"(a) The execution of a will, other than a nuncupative will, *must be by the signature of the testator* and of at least two [2] witnesses as follows:

"(1) The testator, in the presence of two [2] or more attesting witnesses, shall signify to them that the instrument is his will and either:

"(i) *Sign* the will;

"(ii) Acknowledge his *signature* already made; or

"(iii) At his direction and in his presence have someone else *sign* his name for him;  . . ." [Emphasis supplied.]

This document is unsigned. Whether it was "executed according to the law of the place in which it was made," however, we leave for resolution of the appropriate court in the event application for probate is later made under K.S.A. 59-2229, -2230. We leave also for resolution in an appropriate court whether 59-609 and 59-2230 should be considered in pari materia. Such issues are not now before us.

The issue decided above is determinative of this appeal, and other matters raised need not be decided.

The judgment of the trial court, denying the petitions for probate of the instrument dated June 2, 1973, and holding that that document is not a will under our statutes, is affirmed.