No. 54,440

IN THE MATTER OF THE ESTATE OF SARAH R. REED, Deceased.

RUTH C. SCHILLINGER, AS ADMINISTRATOR OF THE ESTATE OF SARAH R. REED, GEORGE ANDREW REED, MARGARET MOORE, MARIE SIEDSCHLAG, DOROTHY SCHWAB, and VIOLA REED SIMISON, *Appellants*, v. INDIANA UNIVERSITY FOUNDATION AND PAULINE WINNICK, *Appellees*.

(664 P.2d 824)

Opinion filed June 10, 1983.

*Elvin D. Perkins,* of Perkins, Hollembeak & Wheeler, of Emporia, argued the cause and was on the brief for Ruth C. Schillinger, Administrator of the Estate of Sarah R. Reed, Deceased, appellant.

*John G. Atherton,* of Atherton, Sanderson & Vander Velde, of Emporia, argued the cause and was on the brief for George Andrew Reed, Margaret Moore, Marie Siedschlag, Dorothy Schwab and Viola Reed Simison, appellants.

*Keith A. Greiner*, of Keith A. Greiner, Chartered, of Emporia, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

LOCKETT, J.: The facts were not disputed and are restated in part from *In re Estate of Reed*, 229 Kan. 431, 625 P.2d 447 (1981) (*Reed I*). Sarah R. Reed died in the Whippoorwill boating accident on Lake Pomona near Vassar, Kansas, on June 17, 1978. At the time of her death, she was Director of the School of Library Science at Emporia State University, and she was a resident of Lyon County, Kansas. Before she came to Kansas she was Assistant Dean of the Graduate Library School at Indiana University in Bloomington, Indiana. While she was living in Indiana she wrote out, in her handwriting and upon a sheet of stationery bearing her name at the top, the following document:

"SARAH R. REED

June 1, 1973

"This is to indicate my wishes should anything happen to me during the period between now and when I make out a will.

"I would like for the following people to have any of my personal and household effects they want: Margaret Griffin (Greenwood Ave.) and Mildred Lowell (Mrs. Wayne) of Bloomington and Pauline Winnick (2800 Quebec Ave., N.W., Washington, D.C. - 201-244-6964). The remaining jewelry goes to Mrs. Robert Johann, 4700 San Jacinto Terrace, Fallbrook, Calif. 92028, since most of it came from her.

"All remaining property including contents of First National Bank Safety Deposit Box goes to I. U. Foundation to be added either to the GLS Birthday Fund or to any other GLS fund where it is used for support for GLS Ph. D. students.

"Witnessed June 2, 1973

[signed] "Benjamin F. Speller, Jr.

[signed] "Bernard M. Fry

[signed] "Clara McLeod"

The instrument contains no signature in the handwriting of Sarah R. Reed; her name appears only in the engraving at the top of the page.

Shortly after Sarah R. Reed's death, a special administrator was appointed; later, the special administrator filed a petition for the issuance of letters of administration, alleging that Sarah R. Reed died intestate. Attached to the petition was the document copied above, which had been found among the deceased's possessions. Petitioner alleged that the document was not a duly executed will, but by reason of its contents "petitioner believes that the

Court and the persons named in said instrument should be apprised of the existence of said instrument." An order for hearing was entered and notice given. Indiana University Foundation answered, denying that the decedent died intestate and denying that the instrument dated June 1, 1973, was not a will. Hearing on the petition for letters of administration was held September 29, 1978; both Pauline Winnick and the Foundation appeared by counsel. The court found that Sarah R. Reed died intestate, but added "that the Court's finding that said Sarah R. Reed died intestate is subject to the introduction of any evidence that may rebut the finding of intestacy, which said evidence must be submitted to the Court within the statutory period." Letters of administration were issued and administration of the estate proceeded.

Afterwards, and within nine months of the date of death of the decedent, both the Foundation and Pauline Winnick filed petitions for admission of the document dated June 1, 1973, as the last will and testament of Sarah R. Reed, deceased. A consolidated hearing was held on the petitions for probate of will on June 12, 1979. The administrator appeared in person and by counsel; all other parties appeared by counsel. At the conclusion of the hearing the court found that the instrument offered for probate "does not constitute a will pursuant to K.S.A. 59-606 because it is not signed at the end or pursuant to K.S.A. 59-609 because the term 'subscribed' in the proviso of such statute means 'signed at the end', and therefore the petitions for probate of will filed by Indiana University Foundation and Pauline Winnick are dismissed." *Reed I* followed.

The controlling issue in *Reed I* was whether the instrument, admittedly executed in Indiana, was "subscribed by the testator" as is required by the proviso of K.S.A. 59-609. Petitioners contended the term "subscribed" in the proviso should be interpreted to mean "signed or authenticated as one's own." In support of that contention, petitioners called our attention to K.S.A. 59-2230, which allows foreign probated wills to be admitted to probate in Kansas upon proof of the foreign probate, and contended that if K.S.A. 59-609 was construed to require signing at the end, such a construction would bar the probate in this state of wills executed in jurisdictions which do not require signing at the end, and would be contrary to 59-2230.

In *Reed I* the court examined the history of our statutes governing the execution of wills. Prior to statehood, the Territorial Legislature of 1859 adopted an act providing that except for oral wills, all wills "must be in writing, witnessed by two competent witnesses, and signed by the testator." L. 1859, ch. 131, § 5, codified as G.L. 1862, ch. 215, § 5. That act was repealed, and new statutes governing wills were enacted in 1865. L. 1865, ch. 86, § 2. The substance of the 1865 act has been carried forward in our probate code through the years. See G.S. 1868, ch. 117, § 2; R.S. 1923, 22-202; G.S. 1935, 22-202; and G.S. 1949, 59-606.

Our first statute, other than procedural statutes, dealing specifically with wills executed outside this state was enacted in 1911, and now appears as K.S.A. 59-609. K.S.A. 59-609 had not been heretofore construed by this court, but the court in *Reed I* reviewed numerous cases dealing with the acts necessary to execute a will under 59-606. (A review of these cases can be found in *Reed I*.)

The court then stated in *Reed I*:

"The proviso of K.S.A. 59-609 has been a part of that section since its original enactment in 1911. Wills executed outside of this state are recognized, whether executed in the manner required by Kansas statutes or the laws of the state in which the will is executed, or by the laws of the state where the testator resided at the time of execution or at the time of his death; but the proviso requires two things of all such wills: they must be in writing, and they must be subscribed by the testator. An oral will, executed outside the confines of Kansas, is not valid in this state; and a will which is not subscribed by the testator is likewise of no force and effect here. . . .

. . . . .

"One other argument advanced by appellants should be given attention; that is the argument that to give effect to the proviso of K.S.A. 59-609 would be contrary to the intent of K.S.A. 59-2230, which provides for the probate in this state of wills probated elsewhere. That statute does not mention 'signing.' K.S.A. 59-2230 provides in substance that if it appears to the satisfaction of the Kansas court that the will has been duly proved and admitted elsewhere, and that it was executed according to the law of the place where it was made, it shall be admitted to probate here. The instrument before us had not been admitted for probate in Indiana when the proceedings below were held, but counsel advised on oral argument that it has since been admitted in that state. Be that as it may, Indiana statutes clearly require that a will be signed. Ind. Code Ann. §29-1-5-3 [6-503] (a) (Burns, 1980 Supp.), states:

" '(a) The execution of a will, other than a nuncupative will, *must be by the signature of the testator* and of at least two [2] witnesses as follows:

" '(1) The testator, in the presence of two [2] or more attesting witnesses, shall signify to them that the instrument is his will and either:

" '(i) *Sign* the will;

" '(ii) Acknowledge his *signature* already made; or

" '(iii) At his direction and in his presence have someone else *sign* his name for him; . . .' [Emphasis supplied.]

"This document is unsigned. Whether it was 'executed according to the law of the place in which it was made,' however, we leave for resolution of the appropriate court in the event application for probate is later made under K.S.A. 59-2229, -2230. We leave also for resolution in an appropriate court whether 59-609 and 59-2230 should be considered in pari materia. Such issues are not now before us.

"The issue decided above is determinative of this appeal, and other matters raised need not be decided.

"The judgment of the trial court, denying the petitions for probate of the instrument dated June 1, 1973, and holding that that document is not a will under our statutes, is affirmed." *In re Estate of Reed,* 229 Kan. at 437-39.

Such issues are now before the court. On September 18, 1980, the Monroe Circuit Court, Monroe County, Indiana, pronounced the document valid for proper admission to probate in the State of Indiana as the will of Sarah R. Reed. Letters of administration with the will annexed were issued by the Indiana court.

May 8, 1981, Indiana University Foundation filed a Petition for Probate of a Will Probated Elsewhere in the Lyon County District Court. The petition was pursuant to K.S.A. 59-2229 and 59-2230 and stated Sarah R. Reed had been a resident of the State of Kansas at the time of her death. The District Court of Lyon County admitted the handwritten document of Sarah R. Reed to probate pursuant to 59-2230 on March 17, 1982. This appeal followed, raising several issues.

The first issue is whether the order of the District Court of Lyon County, Kansas, denying original probate of the instrument in *Reed I* is res judicata as to the admission to probate of the same instrument under the provisions of 59-2229 and -2230.

The doctrine of res judicata is appropriate when there is an existing final judgment rendered upon the merits, obtained without fraud or collusion, by a court of competent jurisdiction. Such judgment is conclusive of causes of actions and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other court of concurrent jurisdiction.

The issue is res judicata only when there is a concurrence of four conditions: (1) identity in the thing sued for, (2) identity of the cause of action, (3) identity of persons and parties to the

action, and (4) identity in the quality of the persons for or against whom the claim is made. *Kumberg v. Kumberg,* 232 Kan. 692, Syl. ¶ 6, 659 P.2d 823 (1983); *Adamson v. Hill,* 202 Kan. 482, 487, 449 P.2d 536 (1969).

The issue in the first proceeding (*Reed I*) was whether or not the document of Sarah R. Reed was entitled to original probate in Kansas under 59-609 as a will executed in Indiana in accordance with Indiana law. We are now faced with the question of whether or not the document is entitled to probate in Kansas under 59-2229 and -2230 based upon an order admitting the will to probate in the State of Indiana.

There is no identity between the petition presented to the District Court of Lyon County for probate of a will admitted for probate in Indiana based upon 59-2229 and -2230 and the petition in the earlier proceeding (case No. 78 P 82) for original probate of the document in Kansas under 59-609. The second proceeding is not barred under the doctrine of res judicata.

Indiana statutory law provides that Indiana courts have jurisdiction to probate the will of a nondomiciliary decedent and issue letters in any county where the decedent left assets or in any county into which assets come upon the decedent's death. At her death, Sarah R. Reed was the owner of an account of slightly less than $10,000.00 at the Indiana University Employees Federal Credit Union in Bloomington, Indiana. There were in addition two retirement annuity contracts under which death benefits were paid to Indiana University Foundation in Bloomington. On September 18, 1980, the Indiana court admitted the document of Sarah R. Reed for probate as a will in Indiana.

Since the Indiana court admitted the will for probate in Indiana, does the full faith and credit provision of Article IV, § 1 of the Constitution of the United States require recognition of the document by the courts of the State of Kansas as the will of a decedent resident of the State of Kansas? We believe the full faith and credit provision does not require this result.

Article IV, § 1 of the Constitution of the United States asserts:

"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

In 28 U.S.C. § 1738 it states that the judicial proceeding of one jurisdiction shall have the same full faith and credit in every court within the United States as they have by law or usage in the courts of the state from which they are taken.

It is well recognized that there are limitations upon the extent to which a state may be required by the full faith and credit clause to enforce the judgments of another state in contravention of its own statutes or public policy. A rigid and literal enforcement of the full faith and credit clause, without regard to the statutes of the forum, would lead to the absurd result that, whenever the conflict arises, the statute of each state must be enforced in the courts of the other, but cannot be in its own. *Pacific Ins. Co. v. Comm'n.,* 306 U.S. 493, 501, 83 L.Ed. 940, 59 S.Ct. 629 (1939).

The Indiana court determined:

"1. Sarah R. Reed died June 17, 1978, with her domicile being the State of Kansas.

. . . .

"5. Sarah R. Reed was on June 1, 1973, and June 2, 1973, domiciled in the State of Indiana.

"6. The execution of the will of Sarah R. Reed meets the requirements of the Indiana Probate Code.

"7. Sarah R. Reed in her own name was the owner of Indiana University Credit Union Account No. 183269 with a value on the date of her death of Nine Thousand Five Hundred Fifteen Dollars and Eighty-one Cents ($9,515.81).

"8. The will of Sarah R. Reed meets the requirements of the Indiana Probate Code for the probate of the will of Sarah R. Reed, the appointment of a personal representative of the estate of Sarah R. Reed and the issuance of letters testamentary for the estate of Sarah R. Reed.

. . . .

"13. The Teachers Insurance and Annuity Association and College Retirement Equities Fund benefits of Sarah R. Reed were payable upon her death to Indiana University Foundation for the use and benefit of the Graduate Library School of Indiana University, Bloomington, Indiana."

The court concluded:

"The will of Sarah R. Reed is a properly executed and witnessed will and, *therefore, a valid will qualified for admission to probate in the State of Indiana."* Emphasis supplied.

What was the effect of the admission of the document as the will of Sarah R. Reed in the State of Indiana on the State of Kansas? In order for the doctrine of full faith and credit to apply, the court in which the judgment is entered, on which judgment

recognition is sought in another state under the full faith and credit clause of the Constitution of the United States, must have jurisdiction of the subject matter and of the parties. Indiana had jurisdiction to (1) admit the instrument for probate as a will in Indiana, and (2) jurisdiction to distribute the personal property of Sarah R. Reed within the State of Indiana.

In *In re Estate of DeLano*, 181 Kan. 729, 315 P.2d 611 (1957), Justice Schroeder (now Chief Justice) set forth the law for the administration of an estate regarding personal property located within and that personal property located outside a state:

"Two distinct legal propositions entirely separate should be borne in mind. First, that the state where personal property is located (whether tangible or intangible personal property) has full power to administer upon it, pay creditors out of it, and dispose of it within constitutional limitations, or, at its option to permit the courts and administrators of other states to take possession and administer it. Second, under normal circumstances the court where the intestate's personal property is located will look to the law of the decedent's domicile to determine heirship, *i.e.*, to determine the persons who succeed to the property and the proportions in which they take. The second proposition is but the usual conflict of laws rule which most courts adopt in order to assure a uniform distribution of all intestate personal property. It is not a mandatory rule, but merely one which most state courts have adopted in the distribution of personal property of a non-resident. Mississippi and Illinois have or had statutes providing that their own intestate laws shall govern distribution of the personal property of a non-resident decedent. (Mississippi Code, 1942 Ann., Vol. 1 A, § 467; and Sec. 1 of the Illinois Descent Act, § 1872, as amended by Laws 1929, p. 359, § 1, Smith-Hurd Statutes, ch. 39, § 1.) This they are free to do because under the proposition first mentioned they have the absolute and final jurisdiction to determine the disposition of personal property within the borders of the state. The United States Supreme Court cases hereafter discussed will show the first proposition to be a fundamental rule of jurisdiction and the second a matter of comity.

"In the event of any conflicting jurisdictional claims between the states of the union, the ultimate arbiter is the United States Supreme Court. Its opinions and decisions make it abundantly clear that the state of actual *situs* of the intangible has the undeniable legal and constitutional right to administer upon it, to the exclusion of all other states, and particularly to the exclusion of the decedent's domicile. [Citations omitted.]

. . . .

"Appellants assert what they contend are two recognized exceptions to the full faith and credit doctrine. First, a second forum may refuse to recognize a foreign decree on the basis of public policy, [citations omitted] and second, that the second forum may also refuse full faith and credit upon a determination that the first forum did not have jurisdiction over the person or subject matter, citing *Williams v. North Carolina*, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279.

. . . .

"It is elementary that judicial proceedings upon property in the absence of jurisdiction over that property, lacks and denies due process of law within the meaning of the fourteenth amendment. A statute which permits and directs such judicial proceedings is void for the same reason. This is exemplified in the Restatement of Law, Conflict of Laws, § 43:

" 'If a State attempts to exercise power by creating interests with respect to persons or things which it has no jurisdiction to create, its action is in violation of the Fourteenth Amendment to the Constitution and is void in the State itself. The Supreme Court of the United States may review all cases whether from a lower Federal court or from a State court of last resort which involve a question of the exercise of power on the part of a State when it has no jurisdiction.' (Comment a.)" 181 Kan. at 736-46.

Full faith and credit must be given to judgments of sister states, but no greater faith and credit than is due the judgment in the state in which it was rendered. Under the law of Indiana, the Monroe Circuit Court had the power to distribute personal property located within the state of Indiana. The Monroe Circuit Court in Indiana neither claimed nor had jurisdiction to determine that the instrument written by Sarah R. Reed was a valid will properly executed according to the laws of the State of Kansas, nor did the Indiana court claim or have jurisdiction to distribute real or personal property of Sarah R. Reed located outside the State of Indiana.

When a person dies and leaves property in a state other than his domicile, it may be necessary to prove a will or take out an administration there. Under the common law, courts of states where real property is located have jurisdiction to probate a will devising the property and determine the sufficiency of the form of the will. Kansas and Indiana determined that Sarah R. Reed died while a resident of the State of Kansas. Each court determined that there was no realty located in Indiana. The real property owned by Sarah R. Reed was located in Lyon County, Kansas, and subject to the probate proceeding filed in the Lyon District Court.

Appellants claim that the provisions of 59-2229 and -2230 do not apply to the will of a decedent who was a resident of the State of Kansas on the date of her death; that 59-2229 and -2230 are procedural statutes to be used in conjunction with K.S.A. 59-806 to prove or admit a foreign will of a nonresident for probate. We agree.

What is a foreign will? There is no definition of the term "foreign will" contained in the Kansas statutes or case law.

Black's Law Dictionary 583 (5th ed. 1979) defines the term as follows:

"Foreign will. Will of person not domiciled within state at time of death. De Tray v. Hardgrove, Tex. Com. App., 52 S.W.2d 239, 240."

The term foreign will is defined in 95 C.J.S., Wills § 340, p. 190 as follows:

"A 'foreign will' is the will of a person who is not domiciled within the state at the time of his death, or a will made in another state by a testator residing there."

Sarah R. Reed was a resident of the State of Kansas at the time of her death; therefore, the instrument in question could not be considered a foreign will under the preceding definitions.

The 1939 Kansas Probate Code was primarily the work of Samuel E. Bartlett, a practicing attorney in Ellsworth, Kansas. A draft of Bartlett's proposed probate code first appeared in the April, 1938, issue of the Kansas Judicial Council Bulletin. What are now K.S.A. 59-2229 and 59-2230 (prior to the 1982 amendment) appear in that draft exactly as they appear today in the statute book. Bartlett's draft of what is now K.S.A. 59-2229 and 59-2230 (prior to the 1982 amendment) is adopted from the Uniform Wills Act, Foreign Probated, a uniform law which was approved for adoption by the National Conference of Commissioners on Uniform State Laws in 1915. Bartlett acknowledges such source for these two sections of his draft in the December, 1938 issue of the Kansas Judicial Council Bulletin.

The Uniform Wills Act, Foreign Probated, was withdrawn by the National Conference in 1943 and a new Uniform Probate of Foreign Wills Act was approved in 1950. The 1950 Act was (and is) specifically limited to wills of testators who die domiciled outside of the state applying the Act. The 1915 Uniform Act did not make this distinction. The legislature made no change in 59-2229 and -2230 either when the 1915 Uniform Act was withdrawn or when the 1950 Uniform Act was approved even though there was a significant change in the uniform law, *i.e.*, after 1950 the uniform law expressly stated that it applied only to non-domiciliaries.

Uniform laws are drafted and recommended to the legislatures of the various states for adoption. The principal object of uniform state laws is to provide, as far as possible, uniform laws on subjects involved that would be common to all the states adopt-

ing them. They are adopted to remove doubts as to controlling rules of law on the subjects involved and are intended to secure not only identity of the statute, but also uniformity in decision. Such uniform laws are decisive as to all matters comprehended within their terms. 73 Am. Jur. 2d, Statutes § 32, p. 287. When the legislature adopts a statute from a uniform law, it carries with it the construction placed upon that statute by the drafters except when such construction is contrary to the constitution or public policy of the adopting state. In determining the legislative intent, courts are not limited to mere consideration of the language employed but may properly look into the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished and the effect the statute may have under various constructions suggested. *State v. Luginbill*, 223 Kan. 15, 574 P.2d 140 (1977).

The 1982 legislature amended 59-2229 and -2230. K.S.A. 1982 Supp. 59-2229 provides:

"When a copy of a will executed outside this state and the probate thereof, duly authenticated, is presented by the executor or any other person interested in the will, with a petition for the probate thereof, the court shall fix the time and place for the hearing of the petition, notice of which shall be given to such persons and in such manner as the court shall direct, if the petition is filed within five years after the death of the testator. The title of any purchaser in good faith, without knowledge of the will, to any property derived from the fiduciary, heirs, devisees or legatees of the decedent shall not be defeated by the production of the will of the decedent and the petition for probate thereof after the expiration of nine months from the death of the decedent."

K.S.A. 1982 Supp. 59-2230 provides:

"If, upon the hearing, it appears to the satisfaction of the court that the will of a resident or nonresident has been proved and admitted to probate outside this state and that it was executed according to the law of the place in which it was made, or in which the testator resided at the time of its execution or of the testator's death or in conformity with the laws of this state, it shall be admitted to probate with the same force and effect as the original probate of a will."

The purpose of the amendments is to create a procedure for probating an instrument executed outside this state, not conforming to requirements of Kansas, but conforming to the laws of the state where the instrument was executed, as a valid will of a resident or a nonresident of Kansas. The fundamental rule of statutory construction is that the purpose and intent of the legislature governs when that intent can be ascertained from the

statute. *Kansas State Board of Healing Arts v. Dickerson,* 229 Kan. 627, 629 P.2d 187 (1981).

Appellees claim that if K.S.A. 1982 Supp. 59-2229 and 59-2230 are procedural statutes allowing the will of a resident approved and admitted to probate, executed according to the law of the place where made, they should be applied retroactively. The statutes do not express an intent to have been applied retroactively. A statute operates prospectively unless the statute clearly expresses a legislative intent to have the statute applied retrospectively. *Thome v. City of Newton,* 229 Kan. 375, Syl. ¶ 6, 624 P.2d 454 (1981). Attempts to probate the instruments were commenced May 8, 1981. The amended statute became effective July 1, 1982, more than one year after the attempt to probate. Our statutes relating to will and probate procedure have been strictly construed even though in some rare situations the intent of a testator may be frustrated. The statutes were not retroactive; therefore, the instrument cannot be admitted as a will under the amended statutes.

Should the administrator, who was appointed prior to the district court's order admitting the will to probate, be allowed to appeal that order?

On occasion, after letters of administration have been granted on the assumption that the decedent died intestate, a will executed by the decedent appears. Kansas is one of the jurisdictions that has a statute designed to handle this problem. K.S.A. 59-707 provides:

"If, after the appointment of an administrator, a will is admitted to probate, the powers of such administrator shall cease, and he or she shall proceed to final accounting. The new executor or administrator with the will annexed shall continue the administration."

The actual probate of a will imposes a duty on the court to revoke any existing letters of administration. The granting of the second administration ipso facto supersedes the first administration. The former administrator is required to settle his accounts and has no further power since that administration has been terminated.

The acts of the administrator done in good faith under the letters of administration are free from collateral attack. The acts of the former administrator are binding on the parties interested in the estate, including the subsequently named executor. Those

who have dealt with the former administrator in good faith are protected.

Generally, for one to be entitled to oppose or contest the probate of a will, it is necessary that he be a person interested in the estate or the operation of the will. Whether an administrator of an estate is entitled to contest a will of his decedent there is a split of authority. On the one hand, it has frequently been held that the administrator does not have sufficient interest to entitle him to contest the will of his decedent. However, there is authority that an administrator may be qualified to contest the will of his decedent. It has been held that the basis of such right is the fact that he represents those who would be entitled to the estate, or hold the assets on their behalf, and hence has the right to see that no testamentary paper is admitted to probate unless genuine. (For an in depth study see *Hill v. District Court,* 126 Mont. 1, 242 P.2d 850 [1952], 31 A.L.R.2d 749.)

Where a statute, in providing for the contest of a will, sets forth such persons who are entitled to contest a will, the statute controls. K.S.A. 1982 Supp. 59-2224 states in part:

"Any heir, devisee, or legatee may prosecute or oppose the probate of any will . . . ."

Therefore, the administrator may not contest the probate of the will of her decedent.

The judgment of the trial court holding that the document is a will under our statutes and admitting it for probate is reversed.