(202 P.3d 99)
No. 100,283

In the Matter of the Estate of JOHN F. LEAVEY, Deceased.

Opinion filed March 6, 2009.

*John P. Hastings*, of Leawood, for appellant Harriet F. Eggeson.

*M. Courtney Koger*, of Kutak Rock LLP, of Kansas City, Missouri, for appellee Gertrude DeLuca.

Before ELLIOTT, P.J., GREEN and MARQUARDT, JJ.

GREEN, J.: Harriet Eggeson appeals from a judgment of the trial court denying admission of the purported February 13, 1987, last will and testament of John F. Leavey, deceased, to probate. On appeal, Eggeson argues that the scrivener's initials in the lower right corner of the attestation page of the purported February 1987 will met the requirements of K.S.A. 59-606 for the will to be admitted to probate. We disagree. We determine that the scrivener's initials found on the lower corner of every page of the purported February 1987 will were insufficient to meet the requirements of K.S.A. 59-606 that the will "shall be attested and subscribed in the presence of [the testator] by two or more competent witnesses, who saw the testator subscribe or heard the testator acknowledge the will." Moreover, Eggeson failed to meet her burden to establish a prima facie case of Leavey's testamentary capacity. Accordingly, we affirm.

Leavey died February 13, 2006, as a resident of Kansas. Leavey's wife, Barbara, had died several years before Leavey. Eggeson petitioned for the probate of a will and the issuance of letters testamentary in regard to the purported February 1987 last will and testament of Leavey. Gertrude DeLuca, the daughter of Leavey, then petitioned for probate of Leavey's alleged last will and testament dated May 13, 1997. In addition, the appellate record indicates that DeLuca filed written defenses to Eggeson's petition for probate of the purported February 1987 will.

The trial court held a trial on Eggeson's petition for the probate of the February 1987 will. During the trial, the February 1987 wills of Leavey and Barbara were introduced into evidence. Both Leavey and Leavey's wife had provisions in their wills stating as follows:

"My [Wife][Husband] and I are executing a Last Will and Testament at approximately the same time. The two Instruments are intended to be, and shall be construed as Joint Wills. Neither of us may modify or revoke our Will during, or after the lifetime of the other, unless consented to by the non-modifying or non-revoking spouse."

Under their wills, Leavey and Barbara left his or her personal property and the residue of his or her estate to the surviving spouse. The surviving spouse would then give certain gifts to three named charitable organizations and the residue of the estate would then

be given one-half to Leavey's children and one-half to Barbara's siblings.

Leavey's signature was at the end of his purported February 1987 will and also after a self-proving statement found at the end of the document. Only one witness, Kelly Baker, had signed after the attestation clause at the end of Leavey's will and the self-proving statement. Baker had died by the time the trial occurred in this case. The signature lines for the second witness were empty. Language within the will indicated that David M. Williams, the attorney who prepared the will, was supposed to be the second witness to the will. Nevertheless, Williams' signature did not appear after the attestation clause or after the self-proving statement. No notary public had notarized the self-proving portion. Three sets of initials, JLL, KAB, and DMW, were in the bottom right-hand corner of each page of Leavey's will.

During trial, Eggeson identified Leavey's signature at the end of the will. In addition, Williams identified the February 1987 will that he prepared for Leavey. Williams, who practiced law from 1984 to 1989, testified that he vaguely remembered Leavey because of the joint contractual will provision, which had been uncommon in his law practice. Williams identified his handwriting within the will but was unable to offer an explanation as to why one of the witness signature lines was blank. Specifically, when questioned why the witness signature line was empty, Williams testified: "I wish I could explain that. I don't know how a will would have left our office like that. That's obviously the space for my signature, which also — I did initial it at the bottom and the next page." Williams further testified that when he initialed the corner of a will, it meant that he was attesting to the will and putting his initials to it.

At the close of Eggeson's evidence at trial, the trial court granted DeLuca's motion for a directed verdict. The trial court determined that the evidence failed to establish that Leavey's February 1987 will was executed with the statutory formalities of execution required under K.S.A. 59-606. Specifically, the trial court found that Eggeson had failed to establish by substantial competent evidence that Leavey's February 1987 will was attested to and subscribed in

Leavey's presence by at least two competent witnesses who saw Leavey subscribe or heard him acknowledge the will. Accordingly, the trial court denied admission of Leavey's February 1987 will to probate.

*Standard of Review*

When ruling on a motion for directed verdict, the trial court must resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought. Where reasonable minds could reach different conclusions based on the evidence, the motion must be denied. When reviewing the grant or denial of a motion for directed verdict, an appellate court applies a similar analysis. *Smith v. Kansas Gas Service Co.*, 285 Kan. 33, 40, 169 P.3d 1052 (2007).

*Execution of Will*

Eggeson argues that Williams' initials in the lower right corner of the attestation page of the purported February 1987 will meet the requirements under K.S.A. 59-606 for the will to be admitted to probate. Whether something less than an actual signature by two or more competent witnesses would be recognized in Kansas has never been directly decided.

"Whether a purported will was properly executed according to the statutory requirements and thereby valid is a conclusion of law. [Citation omitted.]" *In re Estate of Milward*, 31 Kan. App. 2d 786, 789, 73 P.3d 155 (2003). An appellate court has unlimited review of conclusions of law. *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 915-16, 157 P.3d 1109 (2007).

Eggeson's argument also requires interpretation of K.S.A. 59-606. Interpretation of a statute presents a question of law over which an appellate court has unlimited review. *Genesis Health Club, Inc. v. City of Wichita*, 285 Kan. 1021, 1031, 181 P.3d 549 (2008). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007). An appellate court's first task is to "ascertain the legislature's intent through the statutory language it employs,

giving ordinary words their ordinary meaning." *State v. Stallings,* 284 Kan. 741, 742, 163 P.3d 1232 (2007). "When a statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it." *In re K.M.H.,* 285 Kan. 53, 79, 169 P.3d 1025 (2007).

When applying K.S.A. 59-606 to the facts of this case, we bear in mind that a document is not a will unless it meets the requirements of K.S.A. 59-606. *Milward,* 31 Kan. App. 2d at 791; *In re Guardianship of Slemp,* 11 Kan. App. 2d 156, 158-59, 717 P.2d 519, *rev. denied* 239 Kan. 694 (1986). The Kansas statutes "relating to the execution of wills must be strictly construed even though, in some rare situation, the intent of a testator may be frustrated." *In re Estate of Reed,* 229 Kan. 431, 438, 625 P.2d 447 (1981). Where a will is offered for probate, the burden of proof is initially upon the proponent of the will to make a prima facie case showing capacity and due execution of the will. Once it has been shown that a will has been executed in accordance with the formalities required by law, the will contestant has the burden to produce evidence to support his or her position. *In re Estate of Broderick,* 34 Kan. App. 2d 695, 706, 125 P.3d 564 (2005).

K.S.A. 59-606 sets forth the requirements for the proper execution of a will as follows:

"Every will, except an oral will as provided in K.S.A. 59-608 and amendments thereto, shall be in writing, and signed at the end by the party making the will, or by some other person in the presence and by the express direction of the testator. *Such will shall be attested and subscribed in the presence of such party by two or more competent witnesses, who saw the testator subscribe or heard the testator acknowledge the will.*" (Emphasis added.)

As a result, K.S.A. 59-606 requires that a will be attested by two or more competent witnesses who saw the testator subscribe or heard the testator acknowledge the will *and* that the witnesses subscribe the will in the testator's presence. Attestation of a will is generally done by subscription. Black's Law Dictionary 138 (8th ed. 2004) defines attest as "[t]o bear witness; testify" and "[t]o affirm to be true or genuine; to authenticate by signing as a witness." As a result, the subscription of a will generally serves as the means to attest the will. This is demonstrated in the appellate rec-

ord of the instant case where the purported February 1987 will contains witness signature lines following the attestation clause.

It is necessary to the validity of a will that it be subscribed by the number of witnesses required by K.S.A. 59-606. If the will is not subscribed by two or more competent witnesses, the will is invalid. As stated in *Clark v. Miller*, 65 Kan. 726, 728, 68 Pac. 1071 (1902), "It is as essential that the writing be subscribed by at least two competent witnesses as it is that it shall be signed by the testator, in order to be a valid will." See also *Baker v. Hickman*, 127 Kan. 340, 273 Pac. 480 (1929) (holding that will was valid because it was executed and acknowledged in the presence of two attesting witnesses who signed the will).

Here, the validity of Leavey's purported February 1987 will is in question because only one witness' signature appears in the designated lines at the end of the will. Thus, DeLuca argues that the purported will does not comply with K.S.A. 59-606 because it was not signed at the end by two or more competent people in Leavey's presence.

The question is whether a witness' initials in the bottom corner of every page of a purported will meets the attestation and subscription requirement of K.S.A. 59-606. Eggeson offers this court no case where it has been held that a witness' initials in the corner of a page is sufficient for attestation and subscription of a will. Instead, Eggeson attempts to get around the statutory requirements of K.S.A. 59-606 by pointing to Williams' testimony. Specifically, when Williams was being cross-examined by Eggeson's counsel, he testified that his initials on the corner of a will were a legal attestation that he was present and that those were his initials. Later, during cross-examination, Williams admitted that the purpose of his initials on the corner of each page of a will was to show that the document was integrated and that no extraneous documents had been slipped into the middle of the will. Nevertheless, Williams still maintained that his initials also represented his acceptance and attestation of the document.

What is troubling about Williams' testimony is that if Williams' initials were meant to be an attestation within the meaning of K.S.A. 59-606, what was the purpose for the witness signature line

after the attestation clause that Williams drafted? Why would Williams' initials be written at the corner of each and every page of the document instead of just at the end of the document if they were meant to be an attestation? Both Leavey's initials and the subscribing witness' initials appeared at the corner of each page, and their signatures still appeared at the end of the document on the designated lines. K.S.A. 59-606 requires a will to be "signed at the end" by the testator. Moreover, the testator generally signs the will before the attesting witnesses subscribe their names. Williams was unable to offer an explanation as to why his signature did not appear in the designated witness line after the attestation clause.

The purported 1987 will contained the following attestation clause at the end of the will after Leavey's signature:

"The foregoing instrument was subscribed, published and declared by JOHN F. LEAVEY as and for his Last Will and Testament in our presence and in the presence of each of us, and we, at the same time, at his request, in his presence and in the presence of each other, hereto subscribe our names as attesting witnesses.

"Witness our hands, at Lenexa, Kansas, this 13th day of February, 1987.

"_____ Resides at _____

"Kelly Baker Resides at Merriam, Kansas"

Williams' initials did not appear near the empty witness signature line or even immediately after the attestation clause. Instead, his initials appeared at the bottom right-hand corner of the page.

Eggeson suggests that Williams subscribed the purported will when he placed his initials in the corner of the page containing the attestation clause. Although Eggeson maintains in her appellate brief that Williams directly stated that his initials were his subscription, no such testimony can be found in the appellate record. In *Reed*, 229 Kan. at 437, our Supreme Court set forth the following definitions of "subscribe":

"The term 'subscribe' is defined in Black's Law Dictionary 1596 (4th ed. rev. 1968) as 'to write underneath, as one's name; sub, under; scribere, to write; or, to write below a documentary statement.' Webster's Third New International Dictionary 2278 (unabridged 1964) defines 'subscribe' as 'to write (as one's name) underneath.' Webster's Seventh New Collegiate Dictionary 876 (1969) says: '1. to write (one's name) underneath . . . 2. to sign with one's own hand in token of consent or obligation by writing one's name beneath.' "

Here, Williams was the person who drafted the purported February 1987 will for Leavey. He specifically placed witness signature lines for his signature and the signature of the other witness, Kelly Baker, after the attestation clause. Baker placed her initials at the bottom of each page along with Leavey's initials, but Baker still signed her name on the designated witness signature line after the attestation clause. If the initials in the corner of the attestation page were meant to be an attestation and subscription of the will, then Baker's signature on the designated witness signature line would have been unnecessary. Williams' initials were simply insufficient to establish that he had "attested and subscribed" the will in Leavey's presence and had seen Leavey subscribe or heard Leavey acknowledge the will, as required by K.S.A. 59-606.

Nevertheless, arguing that the blank witness signature line does not make the purported February 1987 will invalid, Eggeson relies upon *Milward*, 31 Kan. App. 2d 786, and *In re Estate of Petty*, 227 Kan. 697, 608 P.2d 987 (1980). In *Milward*, this court held that the codicil to the testatrix's will was properly executed even though the testatrix did not sign the signature line. The testratrix, however, had signed the self-proving portion of the codicil. The self-proving portion of the codicil provided that the testatrix had declared to the witnesses that the document was her codicil and that she executed the codicil without any restraint. 31 Kan. App. 2d at 791-92.

Similarly, in *Petty*, our Supreme Court held that the will was properly executed, even though the witnesses did not sign the end of the will, when they signed the self-proving portion following the will. Our Supreme Court noted that the self-proved portion was on the same page as the last article of the will and incorporated into the will by reference. 227 Kan. at 702. Our Supreme Court concluded: "[U]nder the circumstances of this case, where the subscribing witness signed a 'self-proving' sworn statement which appeared on the last page of the will after all of the dispositive provisions, the signatures were sufficiently at the end of the will to comply with the provisions of K.S.A. 59-606." 227 Kan. at 703.

Here, different from both *Milward* and *Petty*, Williams never signed the self-proving portion following Leavey's purported Feb-

ruary 1987 will. K.S.A. 59-606 provides a mechanism for a will to be self-proved during the testator's and the witnesses' lifetimes:

"Such will, at the time of its execution or at any subsequent date during the lifetimes of the testator and the witnesses, may be self-proved, and the testimony of the witnesses in the probate of the will may be made unnecessary by the acknowledgments of the will and the affidavits of the testator and the attesting witnesses. Such acknowledgments and affidavits shall be made before an officer authorized to take acknowledgments to deeds of conveyance and to administer oaths."

In this case, however, the purported will was never self-proved under K.S.A. 59-606 because the self-proving affidavit at the end of the will was not subscribed by two witnesses and was not notarized. As a result, *Milward* and *Petty* have no application to the facts of this case.

Eggeson further argues that the omission of a witness' signature from the intended signature line, when followed by that witness' initials, is only a slight or trifling departure from the statutory requirement of K.S.A. 59-606. Eggeson cites *In re Estate of Perkins*, 210 Kan. 619, 504 P.2d 564 (1972), where our Supreme Court set forth certain principles to be followed in applying the will execution statute. One of those principles was set forth as follows: "The will of the testator should be carried out if reasonably possible and a substantial compliance with statutory requirements is enough. *Slight or trifling departures from technical requirements will not operate to defeat a will.* [Citations omitted.]" (Emphasis added.) 210 Kan. at 624.

In this case, however, the omission of Williams' signature following the attestation clause did not constitute a "slight or trifling" departure from the requirements of K.S.A. 59-606. Instead, there was a complete failure to comply with the requirements of K.S.A. 59-606 that the will be "attested and subscribed" in the testator's presence by two or more competent witnesses "who saw the testator subscribe or heard the testator acknowledge the will." As discussed previously, Williams' initials at the bottom corner of every page of the document were not a sufficient attestation and subscription of the purported will. Moreover, the evidence fails to establish that Williams saw Leavey subscribe or heard Leavey ac-

knowledge his signature on the will. Finally, the evidence fails to establish that Williams subscribed the will in Leavey's presence.

In so holding, we recognize that the scrivener's failure to comply with the statutory requirements of K.S.A. 59-606 means that Eggeson cannot inherit under the purported February 1987 will. Such action, however, prevents fraud, undue influence, overreaching, and bad faith in the execution of wills. In determining that a purported will did not meet the necessary requirements of G.S. 1949, 59-606 to be admitted to probate, our Supreme Court in *In re Estate of Weber*, 192 Kan. 258, 264-65, 387 P.2d 165 (1963), stated:

"While it is unfortunate in this case that [the testator's niece] must suffer from the lack of legal ability and understanding of a scrivener who sought to perform a legal act of great importance and solemnity, that of drafting a will and purporting to supervise the execution thereof, it is better that she be denied her would-be beneficial interests in the will than to open the door and set a pattern, by those not versed in the law of wills and in utter disregard to the plain provisions of the statute, for the drafting of future wills so as to permit fraud, undue influence, overreaching and bad faith which might in some other instances be practiced upon the weak, aged or infirm testators in the disposition of their worldly goods."

Similarly, in *Reed*, 229 Kan. at 436, our Supreme Court, in determining that the document offered for probate was not a will under Kansas statutes, stated:

" ' "It is undoubtedly true that from time to time an honest attempt to execute a last will and testament is defeated by failure to observe some one or more of the statutory requirements. It is better this should happen under a proper construction of the statute, than that the individual case should be permitted to weaken those provisions calculated to protect testators generally from fraudulent alterations of their wills." ' "

Under the facts of this case, the requirements of K.S.A. 59-606 were not met, and the purported February 1987 will was not admissible for probate. We agree with the trial court that Eggeson failed to establish by substantial competent evidence that Leavey's February 1987 will was attested to and subscribed in Leavey's presence by at least two competent witnesses who saw Leavey subscribe or heard him acknowledge the will, as required by K.S.A. 59-606. As a result, the trial court properly denied the admission of the purported February 1987 will to probate.

*Capacity of Testator*

Finally, DeLuca argues that Eggeson failed to offer any evidence of Leavey's competency and thus did not meet her burden of proof. Nevertheless, Eggeson maintains that this court should not address this issue because DeLuca never presented it at the trial court level.

Generally, an issue not raised before the trial court cannot be raised on appeal. *Miller v. Bartle*, 283 Kan. 108, 119, 150 P.3d 1282 (2007). Here, it is unclear whether DeLuca raised this issue in her written defenses to Eggeson's petition for probate of the purported February 1987 will as the parties have not included that document in the appellate record. Nevertheless, the record indicates that the capacity issue was raised at some point during the case as the trial court made specific findings concerning this issue.

Eggeson contends that even if this court chooses to consider the capacity issue, the burden of proof falls on DeLuca because Eggeson met her prima facie burden of proof on this issue with her verified petition. Eggeson cites K.S.A. 59-2213, which states: "The verification of the petition pursuant to K.S.A. 59-2201 and amendments thereto shall constitute sufficient proof of the statements made in the petition in the absence of written defenses or any appearance by an adverse party." Eggeson, however, ignores the fact that the appellate record demonstrates that DeLuca did file written defenses and did enter her appearance as an adverse party. As a result, K.S.A. 59-2213 does not establish that Eggeson met her burden of proof in this case.

At the trial in this case, Eggeson had the burden to make a prima facie case of Leavey's capacity. See *Broderick*, 34 Kan. App. 2d at 706 (Where a will is offered for probate, the burden of proof is initially upon the proponent of the will to make a prima facie case showing capacity and due execution of the will.). In announcing its ruling from the bench at the conclusion of trial, the trial court found that there was no testimony from Williams recalling "Mr. Leavey from the standpoint of discussing his estate, the nature and extent of his estate, or whom the objects of his bounty were intending to be or to demonstrate that Mr. Leavey knew the sub-

stance of the will that he was executing." The trial court further noted that there was no testimony about Leavey's demeanor or about who was present.

The appellate record in this case demonstrates that Eggeson offered no evidence of Leavey's testamentary capacity when he signed the purported February 1987 will. As a result, Eggeson failed to meet her burden to establish a prima facie case of Leavey's capacity, and the trial court properly excluded Leavey's purported February 1987 will from probate.

Affirmed.